CHANCERY.

## Lee *against* Beatty and Others.

[Mr. Owsley and Messrs. Payne and Waller for appellant: Mr. Hord, Messrs. Morehead and Brown and Mr. McClung for appellees.]

8d   204
f128   164

FROM THE CIRCUIT COURT FOR MASON COUNTY.

*April 29.*

Chief Justice ROBERTSON delivered the Opinion of the Court. Judge MARSHALL did not sit in this case.

Bill for a convey ance, according to a stipulation of a deft. in a con tract made near 20 years before: the deft in his an swer, alleges that there is a balance of the considera tion still due, and claims payment. Statement of the facts and circum stances relied on to prove the pay ment, and those which conduce to the contrary conclusion—and which leave the question extreme ly doubtful.—As it devolved upon the complainant to show that he was entitled to the conveyance without payment —the decree for a conveyance, up on such a state of proof, might have been reversed, had there been no other founda tion for it. But the circuit judge submitted the question to a ju-

ALEXANDER K. MARSHALL, who claimed under a junior patent, having sold a tract of land to one *Sampson*, for which *Henry Lee*, claiming under the elder grant, had obtained a judgment in ejectment, made a contract with Lee for quieting Sampson's title, the written memorial of which agreement, dated 1811, and signed by both parties, recited that Marshall was to pay to Lee eight dollars per acre, for all the land within a designated boundary, to which Lee should make a title, and also legal interest on the principal sum until paid, and that a survey should be made to ascertain the quantity. It seems that Lee claimed under the heirs of Wood and Fox; and he therefore agreed that, if the title should be found not to be good, " he would '*pay back*' to Marshall "*eight dollars per acre for any part of the land for which* " *Wood and Fox was not good.*"

At the time of the contract, Marshall paid to Lee five hundred and thirty dollars, endorsed as a credit on the obligation for the price; and, in 1813, he paid four hundred dollars, for which he held a separate receipt.

Shortly after the date of the contract, Ward's heirs, who claimed under a junior grant, sued Lee in chancery, enjoining his judgment in ejectment, and praying for a final decree perpetuating the injunction: and that suit

was not finally disposed of until the year 1833; when the injunction was dissolved as to the land embraced by the contract between Marshall and Lee. But Lee having never made a conveyance to either Marshall, who died in 1825, or to Sampson, or to Beatty, who had bought Sampson's interest, and moreover, having never obtained the title of all the heirs of the patentees Fox and Wood—Beatty brought a suit in chancery against him, in the year 1830, for obtaining a specific execution of the contract with Marshall.

ry, who found that the consideration had all been paid; and their verdict, in a case of so much doubt, should be decisive.

Lee, in his answer, insisted that the whole of the consideration had not been paid. But a jury, impanneled by the Court to try the question of payment, decided that the whole price agreed to be paid had been settled; and thereupon a decree was rendered for a specific execution by a conveyance of the legal title to one hundred and ninety eight acres of the ascertained quantity embraced by the contract.

Lee now seeks a reversal of that decree, because, as he still insists, Marshall never paid more than the two sums before mentioned, amounting, in the aggregate to nine hundred and thirty dollars, and leaving a balance of one thousand and fifty four dollars of the principal sum yet unpaid.

Two depositions were read, for the purpose of proving full payment. One of these states that Lee said to the mother of the deponent, but a short time before Marshall's death, that Marshall had said that he (Lee) would, he feared, give his (Marshall's) family trouble after his death; but that he had no cause for any such apprehension, because all their accounts, except for a tract of land, not the one now in controversy, had been settled, and that Marshall had "*all the papers*," and that nothing remained between them which could enable him to give Marshall's family any trouble. The other deponent stated that Lee, being indebted to him two thousand dollars, drew an order on Marshall, in the year 1823, for seven hundred and fifty dollars, which Marshall refused to pay; and that he, afterwards, in presence of both of them, inquired why the order had been drawn and protested; when Marshall observed, that he had protested it because, up-

on a settlement of all their accounts, nothing would be due from him to Lee; and the latter, suggested that he believed that would be the fact, *but that* he had drawn the order because he had supposed that he and Marshall, "*could settle it.*" And this was all the positive testimony on either side.

The retention of the bond by Lee, without any credit upon it, or receipt against it, except the credit for five hundred and thirty dollars, and the receipt for four hundred dollars; the inability of Lee to make a title, and the right of Marshall to withhold payment until a title had been made, and the continued pendency of the suit enjoining the judgment in ejectment, are all facts which conduce strongly to repel any presumption of payment which might otherwise have arisen from lapse of time, and to show that the two depositions for Beatty do not prove the payment of money upon a bond not due or demandable at either of the times mentioned by the deponents; but should be understood as proving only a settlement of *accounts* then due and respecting other transactions.

On the other hand, the fact that Marshall was, by an express stipulation in the contract, bound for interest from the date of it, and the fact that the quantity of the land could have been ascertained at any time, by survey as provided for in the contract, and that Lee undertook to *refund* to Marshall, if the title should be ascertained to be insufficient, conduce to the conclusion that, it may have been Marshall's interest to pay the whole consideration as soon as convenient, and that, in some way probably without actual payment, he had, in his life time, settled the entire balance. And this deduction, which is far from being intrinsically unreasonable, is fortified, in no slight degree, by the concurrent facts proved by the depositions to which we have adverted—by the fact that he certainly did make payments though not literally bound to do so, and therefore, also, by the long lapse of time.

Upon a careful analysis and due consideration of all these antagonist facts and deductions on each side, we are inclined to think that they leave the scales of induc-

tive probability very nearly equipoised. And therefore, as Beatty might not be entitled to a decree for a specific execution, in a case of so much doubt, without paying the balance claimed by Lee, we might feel it our duty to reverse the decree, had there been no finding by a jury as to the litigated and doubtful fact of payment.

The Circuit Judge might have decided the facts without the aid of a jury. But if, as was doubtless the case, he felt strong doubts upon all the facts as exhibited, and therefore desired an inquisition by a jury to relieve his conscience, it was altogether conformable with the practice of the British chancery, and was also peculiarly proper, to summon a jury to try the facts, and decide on the question of full satisfaction.

As to doubtful matters of fact, a court of equity has a discretion to refer the question to a jury; and Mr. *Maddock* (in his *Chancery*, 2 vol. p. 276,) says that "when "the evidence is so equally balanced on both sides, that "it becomes doubtful which side preponderates, the "Court, in such cases, *will* direct an issue in order to re- "lieve its own conscience, and to be satisfied by the "verdict of a jury, of the truth or falsehood of the facts, "controverted, lest, taking upon itself to pronounce de- " cidedly a matter of such uncertainty, it might do in- "justice to one of the parties, by determining against the "real truth of the fact."

If, however, the Judge shall, after a finding by the jury impanneled in such a case and for such a purpose, be well satisfied that the facts did not authorize the verdict, or preponderated decidedly against it, he would have the unquestionable right to disregard the finding by the jury, and render such a decree as he should have done in the first instance, without the aid of an inquisition. But if, as we should presume would generally be the case when a jury had been properly ordered, the Judge should, after the finding, as before, consider the facts as being equiponderant or very nearly so, he should not disregard the verdict, but should render such a decree as would be proper in a case tried by a jury in a court of law. The verdict should be entitled to some influence, and should at least be respected as the opinion of twelve

Spring Term 1839.

*Lee* vs *Beatty &c.*

A Ch'r *may* decide every question of fact for himself; but any question which he considers very doubtful, he *may*, and *should*, refer to a jury. But the verdict is to satisfy the conscience of the Chancellor; and, if he is not satisfied with it, he should disregard it; on the other hand, if he concurs with the jury, or, if his mind still oscillates, he should allow the verdict to be decisive. See the Petition and Response.

Spring Term
1839.

*Lee*
vs
*Beatty &c.*

intelligent and impartial men, upon doubtful facts which they were peculiarly qualified to determine, *and were therefore summoned to determine.*

Giving such credence and effect to the verdict in this case, and considering the facts as very doubtful, independently of the finding, we are of the opinion that it was proper for the Circuit Judge to decree a specific execution without requiring further payment. We are, also, inclined to the opinion, as before suggested, that there was no actual or formal payment in money of the balance appearing after deducting the nine hundred and thirty dollars; but that this balance was adjusted in some claim or account Marshall had on Lee, and which was understood between them, as being set off against it, and thus only extinguished.

Wherefore, we do not feel authorized to reverse the decree, which must therefore be affirmed.

*June 1.*

PETITION FOR A RE-HEARING.

[By Mr. Owsley.]

CONCEIVING that injustice has been done him by the opinion rendered in this case, the plaintiff respectfully invites the Court to a further examination of the facts and principles decided, and asks a re-hearing of the cause.

Claiming under A. K. Marshall, deceased, the suit was brought, by Beatty, to enforce the specific execution of a contract made by Marshall and Lee, whereby the latter covenanted to convey the title to a described tract of land, and the former covenanted to pay the stipulated price.

Lee admits payments amounting to nine hundred and thirty dollars; but denies further payment, or that Marshall is entitled to any other credit; and insists that he ought not to be compelled to convey, until the entire price of the land is paid.

The Circuit Court caused a jury to be impanneled, "to ascertain and by their verdict determine, what

payments have been made upon the covenant of Marshall, and how much is still due." The jury, by their verdict, found, "that the claim of Lee referred to in the issue made up in the cause, has been paid." Lee then moved to set aside the verdict; but his motion was overruled; and, by exceptions to the opinion of the Court, the evidence used before the jury is set out at large. In ordering the jury, the Court gave no directions as to the description of evidence which was to be introduced, by either party, on the trial of the issue; nor was any witness examined on the trial, or any evidence introduced, except that which was contained in the record when the jury was ordered and impanneled.

It is conceded by the Court, that if there had been no finding by the jury, as to the disputed fact of payment, the evidence would not authorize a decree in favor of Beatty, for the specific execution of the contract, without his paying the amount claimed by Lee to be due and unpaid for the land; but, according to the opinion, the finding of the jury is made to turn the scales of probability, as to the litigated fact of payment, and the Court has therefore sustained the decree of the Circuit Court which but for that finding would have been reversed.

The Court say: "Upon a careful analysis and due consideration of all the antagonist facts and deductions, on each side, we are inclined to think that they leave the scales of inductive probability very nearly equipoised: and therefore, as Beatty would not be entitled to a decree for a specific execution in a case of so much doubt, without paying the balance claimed by Lee, we should feel it our duty to reverse the decree, had there been no finding by a jury, as to the litigated and doubtful fact of payment." And, "we are also inclined to the opinion, as before suggested, that there was no actual or formal payment in money of the balance appearing after deducting the nine hundred and thirty dollars, but that this balance was adjusted in some claim or account Marshall had on Lee, and which was understood between them as being set off against it, and thus only extinguished."

It is believed that the Court has given to the evidence a stronger bearing in favor of the probability of pay-

VIII. 27

Spring Term
1839.
Lee
vs
Beatty &c.

ment, than is warranted by a fair and reasonable construction of the testimony. But it is not intended to go into a particular examination of the facts and circumstances proved. The attention of the Court is respectfully invited to a re-examination of the record, and the facts which the evidence conduces to prove. But supposing the Court to be correct in the opinion expressed as to the opposing probabilities, we insist that the Court has given to the finding of the jury a weight and influence to which it is not entitled. It was undoubtedly competent for the Court to decide on the contested fact of payment, without the intervention of a jury. The case was one of equitable cognizance, and in the exercise of its jurisdiction, it was not only competent, but incumbent on the Court to decide every contested fact. It was doubtless within the discretion of the Court to refer to the decision of a jury, the disputed fact of payment. But we deny that the Court was relieved by the finding of the jury, from deciding on the fact of payment, according to its own opinion on the evidence. It was the province of the Court to determine the contest. The decree to be made, was to be the decree of the Court. The decision of every fact involved in the contest was to be the result of the judgment of the Court, upon the evidence, and not the result of any opinion which a jury might form. As well might this Court, in reversing the decree of the Circuit Court, be influenced by the opinion of the Circuit Judge on a doubtful and disputed fact, as for the Circuit Judge to be influenced by the finding of a jury in a case which might be decided by the Court without the intervention of a jury. If, on·the trial of the issue by the jury, there had been a *viva voce* examination of witnesses, the finding of the jury might with more propriety be entitled to some influence in considering the evidence as to the fact of payment. By having the witnesses before them, and seeing their deportment and manner of detailing their evidence, the jury would be better able to decide on their credibility and judge of the weight of their testimony, than it would be possible for the Court to do, by inspecting their testimony as taken down in writing. Under the Eng-

Spring Term
1839.

Lee
vs
Beatty &c.

lish chancery practice, it is not unusual in the progress of a case, when a fact arises about which the Chancellor entertains doubt, for him to cause an issue to be made up on the doubtful fact, and send it to be tried in a court of law, where the parties have the benefit of a *viva voce* examination of the witnesses. But even after such a trial, the Court never considers itself bound by the finding of the jury. The assistance of the jury is called to satisfy the conscience of the Chancellor; and he may make no use of the verdict whatever, and treat it. as a nullity. *Gresley's Equity Evidence*, 405. It might, however, be admissible, in a case of extreme doubt, to give some weight to the finding of the jury, upon such examination of witnesses; but it is matter of doubt whether, at this day, such a verdict would be regarded by the English Chancellor, so as to change an opinion which he might form from the evidence. Be that, however, as it may, we insist that the verdict in this case, ought not to be regarded by the Court, so as to change the opinion which would have been given, if no such finding had been had. The jury heard no testimony other than what is contained in the record: no witnesses were examined before them, and they possessed no advantages over the Court in deciding on the credibility and weight of the testimony,

It is not to verdicts found upon evidence such as was before the jury in this case, but to verdicts found on *viva voce* examination of witnesses, that Maddock alludes, in the passage cited by the Court.

We would remark that, the jury were not called to enquire as to any set-off. The fact of payment only, was in issue; and the jury cannot be considered as having decided as to any other fact; nor does the record, as we insist, contain any evidence as to set-off.

Ousley, for Lee.

HARVARD
LAW SCHOOL
LIBRARY

Spring Term
**1839.**

*Lee* vs *Beatty* &c.
June 13.

RESPONSE TO THE PETITION.

[By the Chief Justice.]

An allegation of payment, in ch. pleading, is sufficiently sustained by *proof of satisfaction* of the demand, in any way—as by set-off, accord and satisfaction &c.

WE cannot perceive how it can be considered material in this case, whether the balance claimed by Lee, had been discharged by a technical payment, or by a set-off, or an accord and satisfaction. The only question in equity is—whether Lee ever received from Marshall full satisfaction in any mode effectual between the parties.

The practice of referring doubtful questions, in chancery cases, to juries, is not confined to those cases where witnesses are to be introduced; but when the chancellor is perplexed with doubtful questions of fact, he may have the aid of a jury—as well where the decision must be upon the written evidence in the record, as where oral testimony is to be introduced. *Ante,* 207.

Nor can we admit that the quotation we made in the opinion, from the 2d vol. of *Maddock's Chancery,* refers only to inquisitions upon other evidence than that contained in the record at the time of ordering the jury. The more satisfactory ascertainment of doubtful facts by extrinsic evidence, may frequently, perhaps generally, be one chief motive for summoning a jury in chancery. But the quotation from Maddock and the doctrines recognized in many adjudged cases show clearly, that this is not always the only object of the Chancellor, but that, not unfrequently, another end is to be effected by it; and that is, to satisfy the conscience of the Judge; give more confidence and satisfaction to the parties, and thus increase the chances for justice and content in a case perplexed by doubtful facts, which the common sense and experience of twelve intelligent jurors peculiarly qualify such a tribunal to decide correctly and *satisfactorily.* And if the jury, upon such an inquisition, should examine witnesses *viva voce,* still, as that examination is, in this State, in the presence and under the superintendence of the Chancellor, and never (as in England) in any other Court, we can perceive no reason why a verdict on such testimony should here be entitled to more, or to much more, influence on the Judge than he should concede to a similar verdict rendered altogether on the facts before him, on the record. We are well satisfied that it is a long established and a wholesome practice in equity, to call in the assistance of a jury, whenever the Judge feels perplexing doubt upon

important facts which he is unable to decide satisfactorily to his own conscience. This is not denied, but is virtually admitted by the petitioner; who concedes, also, that, in such a case, the verdict, even when rendered on record evidence alone, should be entitled to some effect. And if, as undoubtedly it should, a verdict in such a case should be entitled to *some* influence—why should it be disregarded or set aside when the Court does not dissent from it, and especially when, as in this case, the Court is *inclined* rather to concur with the jury?

Although we are still of the opinion that, independently of the verdict, the facts were so doubtful as to have justified a refusal to decree a specific execution, yet we have inclined, and still incline, to the conclusion that the full price agreed to be paid for the land had been received by Lee before Marshall's death. And, in such a state of case, it does seem to us, that the verdict ought to be deemed satisfactory and conclusive. If not, why were the facts submitted to a jury?

We are satisfied that, in such a case, such verdict should satisfy the conscience of a doubting, but rather concurring Court, and should therefore prevail. *Lord Falconburgh* vs. *Price, Ambler*, 210; *Coker* vs. *Farewell*, 2 *Pr. Wms.* 564; *Clark* vs. *Montgomery*, 2 *Atk.* 378. No countervailing authority has been cited or intimated, in the petition.

Wherefore, not presuming that a re-argument would change our opinion, the petition is overruled.