CASE 42—ACTION BY R. L. JOHNSON AND OTHERS AGAINST B. F. CREECH AND OTHERS INVOLVING TITLE TO LAND AND THE TIMBER THEREON.—OCT. 14.

## Creech &c., v. Johnson &c.

APPEAL FROM BELL CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.  AFFIRMED.

PATENTS—LOCATION—CALLS—LINES—CORNERS — CONSTRUCTION — DETERMINATION OF BOUNDARY.

Held:  1. Where, in construing the description in a deed, the corners are established, they must control the course and distance.

2  Where the terms of a patent from the State are uncertain, or doubtful, it is to be strictly construed against the grantee.

3. Where a call in a State patent to land is for a stake "near Cumberland Gap," the language cannot be construed as meaning in Cumberland Gap.

4. Where a call in a patent from the State placed a certain corner "near Cumberland Gap," but the placing of the corner in accordance with the call would have caused the patent to embrace a town with the county courthouse and public grounds, the word "near" was too indefinite to justify a construction of the patent in accordance therewith, so as to sustain such a result.

5. Where the calls of a patent were for 664 poles, 8,320 poles, 3,200 poles and 3,150 poles, and one of the calls established a corner "near Cumberland Gap," considering the length of the lines of the patent and the notoriety of Cumberland Gap, the location of a corner within five miles of the gap might be reasonably spoken of as near Cumberland Gap.

6. Where the calls of a patent from the State of Kentucky were such that the patent embraced lands in Tennessee and Virginia, in the absence of marked lines or corners, it was proper to adopt that location of the patent which gave about the quantity of land called for by reversing the lines from the beginning corner.

COOK & JONES, ATTORNEYS FOR APPELLANTS.

This is not the first time the location of patent No. 6975 for 86,000 acres of land to Smith, Skidmore & Ledford has been before the courts.

The same question arose in the case of Davis v. Farmer, pending in the United States Circuit Court for the District of Kentucky in the year 1894, when Judge Barr, in his opinion, held that the "fourth corner of said patent was at or in Cumberland Gap, and that the survey could not legally go beyond the Kentucky line." The same question again arose in the case of Davis' Heirs v. Hinckley in the same court in the year 1900 when Judge Evans held the same.

In the case at bar the circuit court before whom the law and facts were tried repudiates the fixing of the fourth corner *in* Cumberland Gap, giving as a reason for such repudiation that as the word "near" is of equivocal import it ought not to overcome the call for course and distance which fixed the point called for definitely.

Our contention is that the fourth corner of said patent is *in* Cumberland Gap, as held by Judge Barr and Judge Evans, and that the next call of said patent must run its full length of 3,200 poles on the degree north, 15 east; that the surveyor who made the original survey had not authority to go outside, and did not go outside of Kentucky in making the survey, but followed the Kentucky line from the third corner to the center of Cumberland Gap.

We insist that the rules laid down by this court in Pearson v. Baker, 4 Dana, 323, do not apply to this case; that the rule as to contracting or extending the distances must be subordinate at all times to the State lines, and in no event can the lines be extended beyond the boundary of the State of Kentucky.

And we insist, moreover, that the *quantity* of land embraced

by any particular location of the patent in controversy is not to be considered when it is conceded that the said patent, however located, will not hold more than 86,000 acres that was vacant and unappropriated at the time the survey was made on which the patent was issued.

It seems to us that it would be a useless task to speculate as to the different locations that may be given to said patent if we once depart from the idea that the fourth corner thereof is located *in* Cumberland Gap, and we shall not therefore consume time in noticing the reasoning by which the lower court in its findings arrived at a conclusion which militates against our contention as well as against the former judgment of the court in Asher & Sons v. Howard.

WM. LOW AND W. O. HARRIS, FOR APPELLEE.

The proper location of patent No. 6975 was considered by this court in the case of Asher & Sons v. Howard, and the court refused to fix the location upon the ground that the case had not been sufficiently prepared to enable it to do so.

The contention of the appellants is that the call for a stake at Cumberland Gap fixes Cumberland Gap as the fourth corner and that the proper manner of locating the patent is by running the calls of the patent from that point to the beginning, increasing the length of the fifth and sixth lines to close.

The circuit judge held, upon the authority of Pearson v. Baker and Others, 4 Dana, 328, and the authorities cited therein, that as the patent will not close upon its courses by any method of location unless the distance of the third and fourth lines are contracted, or the distance of the fifth and sixth lines are extended it was proper in the absence of evidence showing in which lines the mistake was made, to contract the third and fourth lines by reversing the patent from the first corner pursuing the courses of the patent to the beginning.

By this method of location the number of acres by the patent in Kentucky (93,552 acres) is nearer to the number called for than by any of the other locations.

By the location adopted by the circuit court the fourth line crosses Cumberland mountain about five miles east of Cumberland Gap. As stated by the circuit judge, the word "near" is an indefinite term, its exact meaning depending upon the circumstances under which it is used.

Such indefinite words of description ought only to be resorted to, in fixing boundaries, in the absence of more definite and exact description. But in this patent the courses and distances

are given; they fix the location of the corner definitely and show just how near it is to Cumberland Gap. The courses and distances control in the absence of marked lines and corners.

The Federal judges, in their opinions filed with appellants brief, have treated the stake corner, near Cumberland Gap, as a natural object and have, in effect, made the third call of the patent read as follows: "Thence with the State line S. 60, W. 8,320 poles to the State line monument in Cumberland Gap."

For such a change in the calls of the patent there is no warrant of law, and it would do violence to the instrument in several particulars.

1. The State line at this point is not a straight line, but a very crooked one.

2. It does not at any point run south 60 west.

3. To locate the fourth corner at Cumberland Gap, we must travel three and one-fourth miles north from the point fixed for the corner by courses and distances, and to make the survey close we must extend the fifth line 1,858 poles and the closing line 1,840 poles.

4. To locate this corner at Cumberland Gap we must increase the acreage of the patent from 86,000 acres to 182,184 acres.

Surely these are reasons enough why the court should not follow the Federal judges in altering the language of the patent and substituting for it something so wholly different.

The location of a patent is the act of the patentee and not that of the State. If he so locates it as to make his patent void it is his own lookout. There is no warranty in law or morals in a public grant.

Assuming that the fourth corner is what it purports to be—a stake corner—all difficulties disappear.

If we run from the first to the last corner by courses and distances, the patent will contain 113,722 acres in Kentucky. If we reverse and run from the last call to the first it will contain 93,552 acres.

Under these circumstances the rule is to reverse (4 Dana, 323).

If thus located, appellees' seventeen acres will be outside the Ledford patent, and the judgment should be affirmed.

## AUTHORITIES.

Patent should be reversed. Asher & Sons v. Howard, 70 S. W., 277, and 72 S. W. R., 1105; Pearson v. Baker and Others, 4 Dana, 328; Thornbury v. Churchill, 4 T. B. Mon., 32; Simpson v. Wells, 26 S. W. Rep., 587; Beckley v. Bryan, Sneed 91;

Bryan v. Beckley, 5 Litt., 91; Preston's Heirs v. Bomar, 2 Bibb., 493; Am. & Eng. Ency., vol. 4, p. 789, 2d ed.

Course and distance control further call as being near. Harry v. Graham, 1 Dev. & B. L., 76-27 Am. Dec., 226.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellees, on August 21, 1902, obtained from the Commonwealth a patent to fifty acres of land in Bell county. The patent was issued on a survey bearing date of November 6, 1901. They filed this suit against appellants, charging that they had entered upon the land so patented, and cut from it timber of the value of $798.04. They prayed judgment for the specific recovery of the timber and $400 in damages. The defendants pleaded that the patent referred to was void for the reason that none of the land covered by it was vacant or unappropriated at the time of the survey, but that all of it was embraced in a patent for 86,000 acres issued to Ledford, Skidmore & Smith on September 25, 1845, and also by a patent granted to Boyd Dickinson many years ago. The proof on the trial showed that only about seventeen acres of land was vacant when the patent was issued if the patent for 86,000 acres to Ledford, Skidmore & Smith was left out of view, and that the defendants had cut on this seventeen acres timber of the value of $256. The court held, under the evidence, that this seventeen acres was not included in the patent to Ledford, Skidmore & Smith, and was vacant when appellees' patent issued. He therefore gave judgment against appellants for the value of the timber cut, and they have appealed.

The patent to appellees was void if the land was not vacant. There was no attempt to show that the land was covered by any other patent than that of Ledford, Skidmore & Smith, and whether it was included in that patent is the only question to be determined on the appeal. The calls

of the patent are as follows: "Beginning at Crank's creek, on two beeches and two sugar trees, beginning corner to said Smith's fifteen hundred acre survey; thence S., 70 W., 664 poles, to three beeches, beginning corner to Smith's six hundred acre survey; thence S., 28 W., 400 poles, to a stake on top of the Cumberland Mountains; thence S., 60 W., 8,320 poles, to a stake near Cumberland Gap; thence N., 15 E., 3,200 poles, to a stake; thence N., 55 E., 8,820 poles to a stake; thence S., 5 W., 3,150 poles, to the beginning, with its appurtenances." The beginning corner of the patent on two beeches and two sugar trees on Crank's creek, corner to Smith's 1,500-acre survey, is established and undisputed. So is the second corner, at three beeches, corner to Smith's 600-acre survey; and there is no difficulty as to the stake on the top of the Cumberland Mountains, S., 28 W., 400 poles, from the second corner, although the distances as run on the ground are longer than those called for in the patent, and in running from the first to the second corner there is some variation in the course called for to reach the corner. But the corners, being established, must control the course and distance. The trouble comes with the next call of the patent, "S., 60 W., 8,320 poles, to a stake near Cumberland Gap." If this line is run on the course called for, it strikes out through the States of Virginia and Tennessee and corners in Tennessee three and three-fourths miles south of Cumberland Gap. The State of Kentucky, it can not be presumed, undertook to patent land in Virginia and Tennessee. So, it appears from an exhibit filed in the record the United States Circuit Court held in two cases before it that the course of the patent should be disregarded, and the corner set in Cumberland Gap, the line running with the State line, and following the meanders of the top of the mountain to a stake in the

center of Cumberland Gap. If this point be taken as the corner, and the next line is run N., 15 E., 3,200 poles, to a stake, in order to make the patent close, the next line, which calls for 8,820 poles, has to be increased to 9,878 poles, and the sixth line has to be increased from 3,150 poles to 4,990 poles. If the patent is thus run out, it contains in Kentucky 182,184 acres, and will include the land in controversy. But if, instead of thus extending the lines as indicated, we begin at the beginning corner, and reverse the calls of the patent, stopping when we get to the State line, and then following the State line to the third corner, the patent will contain in Kentucky 93,552 acres, and will not include the land in controversy. The situation is roughly shown on the following map, on which the lines 1, 2, 3, 7, 8, 9, 10, 6, 1, indicate the location of the patent on the supposition that the fourth corner is in the center of the Cumberland Gap, and the lines 1, 6, 5, 7, 3, 2, 1, the location of the patent if its calls are reversed from the beginning corner, and the patent is closed by following the State line from the point where it is reached at 7 to the established corner at 3:

The point 7 is about five miles from Cumberland Gap. None of the lines in question have any marks on them. The circuit court accordingly adjudged in favor of the location

of the patent by reversing its calls from the beginning corner, thus fixing its location as shown by the lines 1, 6, 5, 7, 3, 2, 1, on the map. The defendants appeal.

The only question we deem it necessary to consider is whether this is the correct location of the patent, or whether the fourth corner should have been located in Cumberland Gap, and the other lines run out from that corner as indicated by the lines 8, 9, 10, 1, on the map. In Asher v. Howard, 24 R., 2118, 70 S. W., 277, 72 S. W., 1105, this court declined to determine the proper location of the patent in question because the record was not sufficiently prepared to furnish the court the necessary data. The record before us has been prepared with a view to present the question. In Thornberry v. Churchill, 20 Ky., 29, 16 Am. Dec., 125, the court said: "The order in which the surveyor gave the lines and corners in the certificate of survey is of no importance to find the position of the survey. By reversing the courses is as lawful and persuasive as by following the order in the certificate of survey. The cases adjudged upon that point are conformable to reason and practical utility in guarding against mistakes and destruction of corners by fraud, accident and the elements." Again, in Pearson v. Baker, 34 Ky., 321, the court said: "The beginning corner in the plot or certificate of survey is of no higher dignity or importance than any other corner of the survey. The order in which the surveyor gives the lines and corners in his certificate of survey is of no importance to find the true position of the survey. Reversing the courses is as lawful and persuasive as following the order of the certificate. That construction is to prevail which is most against the party claiming under an uncertain survey. It is his duty to show and establish his corners." In issuing patents the Government acts as trustee for the

people. The survey is made by the patentee, and the patent is issued on his application. The grant is therefore strictly construed against the grantee where its terms are uncertain or doubtful. 4 Am. & Eng. Ency. of Law, 801. "The calls may be reversed when, by so doing, the quantity of land embraced will more nearly harmonize with that called for in the grant; but the courses and distances, as given in the survey, should be followed when reversing the calls would not have that effect." 4 Am. & Eng. Ency. of Law, 789. "Quantity aids in ascertaining the premises granted when they are not described by known and established boundaries." Id., 790. It will be observed that the two first corners of the tract are corners of Smith's survey, and that all the other corners of the patent are located at stakes. The fact that no timber is called for at any of these corners, and that the distances from the first corner to the second and from the second to the third, when run on the ground, exceed those given in the patent, would seem to indicate that this patent was, perhaps, laid out by protraction, and that the surveyor did not in fact run the lines. But whether this is true or not, there is not enough in the patent to fix the fourth corner in the center of Cumberland Gap. The call of the patent is for a stake near Cumberland Gap. The language would indicate that the stake was not in Cumberland Gap, but near it, for that is a point so well known that it is reasonable the surveyor would have called for a stake in Cumberland Gap if that was in fact the location of the corner. If the corner is located here, it not only makes the patent contain more than 182,000 acres, instead of 86,000 as called for, but it takes in the town of Harlan, with the county courthouse and other public grounds. The word "near" is too indefinite to justify a construction

of the patent to sustain such a result under the rules above referred to. On the other hand, if we reverse the calls of the patent, it includes about 93,000 acres of land, which is more than the quantity called for, and the fourth corner is located on Cumberland Mountain near Cumberland Gap. Considering the length of the lines of the patent and the notoriety of Cumberland Gap, we are of opinion that the location of the corner within five miles of Cumberland Gap might reasonably be spoken of in the survey as "near Cumberland Gap." It can not be presumed that a grant of 86,000 acres was intended as a grant of 182,000 acres. Nor can it be presumed that the fifth aand sixth lines of the patent were intended to be extended so far beyond the patent calls as would be necessary to close the survey on the supposition that the fourth corner is in Cumberland Gap. The patent calls for the land in Harlan county, Ky. It can not be presumed that it was intended to embrace land in Tennessee or Virginia, or to embrace the county seat of the county where the survey was recorded, or the town about it. In the absence of marked lines or corners or other evidences establishing the proper location of the grant, the circuit court, construing the grant against the grantee where the descriptions are uncertain, properly adopted that location of the patent which gave about the quantity called for, and preserved the courses and distances of the patent calls for the fifth and sixth lines of the survey by reversing the lines from the beginning corner. Harry v. Graham, 27 Am. Dec., 226.

Judgment affirmed.