## Limbert-Driskill, et al. v. Dixon & Sexton.
## Limbert-Driskill, et al. v. Lowery Brothers.

(Decided May 18, 1911.)

### Appeal from Livingston Circuit Court.

Land—Boundary—Lost Corners—How Established—It is a primary rule in establishing lost corners to go to known corners of the survey and reverse the calls, and in this way find or locate the lost corners.

HENDRICK, MILLER & MARBLE for appellants.

C. C. GRASSHAM, WILSON & LANDRAN for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

These two cases involve a common question and are considered together.

On June 1, 1785, three entries and surveys of a thousand acres each were made, adjoining each other, on the Cumberland River. They were taken out in the names of William Thompson, Augustus Tabb, and Rawleigh Colson, assignee of James Quarles. On the day following, June 2d, a survey was made in the name of Barbara

Vance McClurg. This latter survey lies immediately west of the three above named surveys and contains three thousand acres. By mesne conveyances these lands have passed from the original patentees to their present owners. The plaintiffs in these suits own a portion of the James Quarles thousand acre patent, and the defendants a portion of the Barbara Vance McClung three thousand acre patent. The location of these respective patents is shown by the following map:

The point in dispute is the location of the boundary line separating these two patents, plaintiffs claiming that the true boundary line between them is along the

line C-G, while defendants claim it is at B-L. In order to have their titles quieted and the defendants enjoined and restrained from trespassing upon their lands the plaintiffs instituted their suit in equity; but the chancellor was of opinion that they were not entitled to maintain such suits, and dismissed their petitions. From that judgment they appealed, and the cases were reversed and remanded for trial on the merits (Dixon, et al. v. Driskill, et al., 122 S. W., 204), this court holding in that opinion that such suits in equity are authorized by section 2361, Kentucky Statutes, which provides that:

"The owner of land may maintain the appropriate action to recover damages for any trespass or injury committed thereon, or to prevent or restrain any trespass or other injury thereto or thereon, notwithstanding such owner may not have the actual possession of the land at the time of the commission of the trespass."

Upon the return of the cases to the circuit court the chancellor found in favor of paintiffs and adjudged them the owners of the lands claimed by them; and of that finding and judgment the defendants in each suit complain and appeal.

The question in dispute is simply the location of the boundary line between these two old patents, the plaintiffs claiming under the one, and the defendants under the other. None of the original landmarks or trees pointing out the corners of the James Quarles tract are to be found. All are gone. The evidence given by the residents as to the location of these corners is far from convincing, and the reports of the survey made by the surveyors, Vick & Harrison, are neither in all respects satisfactory. They are not as full and complete as they should have been. Vick undertook to locate the line in dispute by ascertaining the true location of the points A and H on the river, and then running west from each point the course called for in the patent the required distance. The result of his work is not satisfactory for two reasons. In the first place, it is not shown that the points A and H, as located by him, are where they were when the survey was made. The river has been washing away its banks for some years, and there is evidence that it has cut away the bank along in front of this survey for quite a distance, so that it is altogether probable that the points A and H at the time the survey was made

are now some distance out in the river. In the second place, if these points are taken as the true beginning points, and the distances called for in the patent are run out, neither extends to the points C or G; but in order to make them do so it is necessary for the surveyor to extend the line A-C 47 poles and the line H-G 12 poles beyond the patent calls. Harrison attempts to locate the southwest corner of the Tabb survey, which is the northwest corner of the Colson-Quarles survey, as follows: He went to the north boundary of the William Thompson tract and located the division point in said line between the Thompson survey and the McClurg survey. He located it at a point which seems to be accepted as the corner in the line dividing the Thompson patent from the McClurg patent  He then ran out the course called for in the patents, passing along the line between the Tabb patent and the McClurg patent to the point L, which he locates as the northwest corner between the Tabb patent and the Colson-Quarles patent. Having located this corner, he ran the line from that point south the course called for in the patent, and established the line L-B as the true division line between these patents. The Colson-Quarles patent calls for the corner of the Tabb patent as its northwest corner, and the Tabb patent calls for the William Thompson corner as its northwest corner, and all of these patents have for their western boundary a straight line south five west. The correctness of his finding depends, of course, upon the accuracy with which he located the southwest corner of the Tabb survey. If he has properly located this corner there can be no question but what the line L-B as established by him is the true division line between these surveys. He testifies that, in locating this line, he had all four of these old patents. The patents show that the William Thompson survey was first laid out, then the Augustus Tabb, then the Colson-Quarles, and after that the McClurg. The McClurg patent calls for a tree at the northwest corner of the Thompson survey marked W. T. That tree was gone, but a point was designated by one William Martin, who owned the land cornering at this place, as the true corner, and a stone marked W was found there. This stone seems to have been accepted as the true corner; but in order to learn if it certainly was the corner, the surveyor went to the northwest corner of the McClurg patent at F, which was not in

dispute, and measured to the stone marked W; and he also measured from the Cumberland River at S along the north line of the Thompson survey, and according to the distances called for in each of these lines, the stone marked W was the true corner. As to the correctness of his finding in this particular we have the location of the stone pointed out by Martin, and this verified by the actual measurements called for in the original patent. We think that this evidence, aside from any other, establishes with reasonable certainty the beginning point. He then proceeded according to the calls of the Thompson, Tabb, Colson-Quarles patent, making allowance for the magnetic variations between the dates of the two surveys, and at the southwest corner of the Thompson survey he found a mulberry tree at X, some eighteen inches in diameter. In the original patent this corner calls for an ash, a mulberry and an elm. Neither an ash nor an elm were standing at this time. The surveyor testified that people living in that neighborhood claimed that the mulberry tree found standing there was one of the original corner trees. It is strongly contended for appellees that it can not be because it is not more than eighteen inches in diameter. But it is well known that the mulberry rarely ever grows to be a large tree, and that they are of slow growth. So that the fact that it is not in excess of eighteen inches in diameter can not be accepted as militating against the general understanding of those living in that neighborhood that it was one of the original corner trees. At other points along the line he discovered line trees, hickory and post oak, but at the southwest corner of the Tabb tract all of the old timber was gone. This line, run from the stone marked W to the mulberry at X, the southwest corner of the Thompson tract, when continued establishes the southwest corner of the Tabb tract at L, and, extended further along the call of the original patent, established the southwest corner of the Colson-Quarles tract at B. When so run neither survey laps upon the other; whereas, if run as plaintiffs insist the line should be run, the McClurg survey would lap upon the Colson-Quarles survey.

It is argued that, as the three one-thousand-acre patents were surveyed on the first day of June, and the three-thousand-acre patent was surveyed on the second day of June, and the surveyor making the last survey

was familiar with the lines of the first survey, they were necessarily made by the same man, and that he would not have so drawn them as to cause one to lap upon the other. There is much force in this suggestion. The record does not show that these surveys were made by the same surveyor, but inasmuch as they were made upon succeeding days, and whoever made the three-thousand-acre survey was familiar with the west lines, courses and distances of the three one-thousand-acre surveys, it is practically certain that they were made by the same man. The Colson-Quarles survey corners with the Tabb survey. The survey as made by Harrison has it do so, whereas the survey as made by Vick gives to the Colson-Quarles survey a corner on the line of the Tabb survey extended, but does not corner with it. The west line of the Thompson, Tabb, and Colson-Quarles surveys is a straight line, and the east line of the McClurg patent calls for this same line. The survey as made by Harrison conforms in every particular to this requirement in the old patent, whereas the Vick survey makes the dividing line between the Thompson and Tabb surveys and the McClurg survey a straight line, and when he reaches the Colson-Quarles survey provides for an offset at right angles, and extends the Colson-Quarles survey for some distance into the McClurg patent, and then continues the division line between them south five west.

It is evident that this survey can not be accepted as establishing this line. He depends alone upon the uncertain memory of settlers in that neighborhood as to the location of the points A and H. He had no means whatever of verifying the opinion of these settlers that the points were properly located. However, having them as located, he proceeded westwardly along the lines called for in the original Colson-Quarles patent, and which are not in dispute, until he had run out of the distances called for in the patent. The original corner trees called for in the patent were gone. No stones were found; but, for some reason not altogether clear, he extended these lines the distances above indicated and established corners at C and G, and then, by drawing a straight line between these newly established corners, he fixed the western boundary of the Colson-Quarles survey. Neither the southwest nor the northwest corner of the Colson-Quarles patent, as established by him, answer the description of the corners established in the

Colson-Quarles patent, and there was nothing at either point to indicate that these corners had ever theretofore been located at those points. It is a primary rule in establishing lost corners to go to the known corners of the survey and reverse the calls, and in this way find or locate the lost corner. Here all of the corners are lost. But one is easily ascertained, for the survey calls for the southwest corner of the Tabb survey as the north west corner of this survey, so that the northwest corner of this survey can be established with accuracy if the southwest corner of the Tabb survey can be established. The south boundary line of the Tabb survey is known and the west boundary line is known, and they meet or corner at L. This then must be the true northwest corner of the Colson-Quarles survey. Its southwest corner is ascertained by running a line along the course called for in the original patent, making proper allowance for the magnetic variations, until such line intersects with the south boundary line of this patent, which is not in dispute. The point at which they intersect is the southwest corner, and the line connecting them is necessarily the division line between the Colson-Quarles survey and the McClurg patent. Accepting this as the division line, the McClurg patent does not lap upon the Colson-Quarles survey at all, but is made to run with it as the original patent provides it should.

The trial judge erred in not holding the line B to L the true division line between these patents.

Judgment reversed and cause remanded for further proceedings consistent herewith.