## Combs, et al. v. Valentine, et al.

(Decided June 9, 1911.)

## Appeal from Leslie Circuit Court.

1. Boundaries—Lost Corners—It is a primary rule in establishing the lost corners of a survey to go to known corners and reverse the calls.

2. Same—The order in which the surveyor gives the lines and corners in his certificate of survey is of no importance; to find the position of the survey by reversing the courses is as lawful and persuasive, as by following the order in the certificate of survey.

3. Same—That construction is to prevail which is most against the party claiming under an uncertain survey, since it is his duty to show and establish his corners.

T. G. LEWIS and J. M. BICKNELL for appellants

CLEON K. CALVERT for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellants, claiming to be the owners and in possession of a tract of 250 acres of land in Leslie County on the Coal Branch of the Middle Fork of the Kentucky River, known as the John Eversole Patent No. 7315, brought this action against appellees to restrain them from trespassing thereon. The petition alleges that appellees had cut down seventeen valuable white oak trees, and sawed them into logs, and would continue to commit further trespasses unless they were enjoined from doing so. The decision of the case depends entirely upon the location of a boundary line of the patent with respect to the timber which appellees have cut. If the last two lines of the survey are run and located in accordance with the contention of appellants, the boundary encloses the cut timber; but, if they be run according to the contention of the appellees, the boundary does not include the timber. The circuit judge adopted the contention of the appellees and dismissed the petition, and from that judgment the plaintiffs appeal.

The boundary reads as follows:

"Beginning at the head of the Robert Bowling Branch, where the road crosses the mountain to the Coal Branch at a beech, dogwood and sourwood; thence with the meanders on the top of the ridge to a chestnut oak a corner of one thousand acres survey made in the name of Justus Bowling; thence a straight line to a black oak, being a corner to said Eversole tract, N. 9 E. 92 poles to a stake; thence N. 47 E. 4 poles to a walnut; thence N. 67 E. 36 poles to a poplar; thence N. 46 E. 66 poles to a poplar and hickory; thence S. 85 E. 38 poles to a black gum; thence N. 42 E. 36 poles to two poplars; thence S. 5 E. 74 poles to a beech and maple; thence S. 14 W. 34 poles to a chestnut; thence S. 40 E. to the top of the ridge between the Coal Branch and John Langdon Branch to a conditional line between W. E. Bowling and John Langdon, running with the line on the top of the ridge to where the line of the said Eversole survey crosses the ridge; thence S. 45 E to the Company's line being the same tract George Bailey sold; thence running with the Eversole survey crossing the ridge; thence S. 45 W. to the said Company's line, being the same tract that George Bailey sold; thence running with the Company's line to where the Eversole patent crosses; thence N. 40 W. to a chestnut oak corner; thence S. 100 poles to said Company's line running with the Company's line to a poplar; thence to a chestnut oak so as to include all the land W. E. Bowling owns between said poplar and oak; thence to the top of the knob between Camp Branch and Coal Branch; thence with the meanders of the ridge to the beginning, containing 250 acres."

The following plat of the foregoing boundary shows the courses of the survey and the respective contentions of the parties:

Appellees contend that the lines beginning at the fourteenth call should run to the upper 15 (within the circle); thence southwardly to 16; thence to 17; and thence to the beginning; while appellants contend that the line should run from 14 to the lower 15 corner, and thence by the dotted lines to 16, 17 and to where it ends at the star near the Chestnut Gap Fork, without closing the survey. The several small cross marks indicate the location of the trees that appellees have cut.

There are three corners to the Eversole survey that are known and agreed upon by all of the parties to this action. These corners are the first or beginning corner; the eleventh corner; and the twelfth corner. The problem for decision consists, according to appellant's

contention, in locating the fifteenth corner, which is called the lost corner; while the appellees state the question somewhat differently, by saying that the problem here is to properly close the survey. From the beginning corner of this survey to the twelfth corner there is no controversy; the controversy arises over the method of running out the survey from the twelfth corner to the beginning. If the survey be run from the twelfth corner to the beginning on the courses called for in the patent, and giving each line its distance, the survey will not close, but the courses and distances will carry the lines of the patent to the lower figure 17, and from thence along the dotted lines to the star near the head of the Chestnut Gap Fork. As we understand the appellants, they contend that the patent should be run to the seventeenth corner according to the calls and distances of the Patent, and should then run to the beginning, entirely disregarding the bearing and distance of the seventeenth or closing line; or, if this be not right, then the proper way to locate this survey is to run from the twelfth corner according to the courses and distances called for by the patent to the seventeenth corner; and then by reversing the last line, close the survey by extending the last two calls to their intersection at K. This method would throw the disputed territory within appellants' boundary. On the other hand, the appellees maintain that the correct way of locating this survey and establishing the lost corner is to run the eleventh, twelfth, thirteenth and fourteenth lines thereof according to the courses called for by the patent, giving to each its full distance, and then go to the beginning corner and reverse the seventeenth, sixteenth and fifteenth calls in their bearings, giving to each its correct bearing and full distance. Following this method it is apparent that the survey will not close, since the distance of the fourteenth line carries it only to the lower 15 in that line, and the distance of the fifteenth line reversed carries it only to the circle at the point "S" in that line; and, having arrived at the points from whence the fifteenth corner must be located, and from whence this survey must be closed, the proper procedure is to extend the fourteenth and fifteenth lines until they intersect each other at the upper point 15 within the circle, which is the lost or disputed corner. It is contended that this

method closes the survey according to the rules laid down by this court in many cases.

In the late case of Limbert-Driskill v. Dixon, 143 Ky., 759, this court said:

"It is a primary rule in establishing lost corners to go to known corners of the survey and reverse the calls, and in this way find or locate the lost corner." See also Chambers v. Tharp, 29 Ky. Law Rep., 271.

This is but a repetition of the rule announced in the leading cases of Beckley v. Bryan, Sneed's Pr. Dec., 91, and Bryan v. Beckley, Litt. Sel. Cas., 91, and in the subsequent cases of Thornberry v. Churchill, 4 T. B. M.. 32, and Morgan v. Renfro, 124 Ky., 314.

In Pearson v. Baker, 4 Dana, 323, this court said:

"Certain principles have been settled by this court, which when applied to this case, will settle this matter.

"First. In the general, distance yields to course, or in the absence of any circumstance bringing the mind to a contrary conclusion, the courses shall be first pursued, contracting or extending the distances as the case may require, to make the survey close. Litt. Select Cases, 91.

"Second. The beginning corner in the plat, or certificate of survey, is of no higher dignity or importance than any other corner of the survey. Beckley v. Bryan, Printed Decisions, 107, 1 Pirtle's Digest, 114.

"Third. The order in which the surveyor gives the lines and corners in his certificate of survey, is of no importance to find the true position of the survey. Reversing the courses is as lawful and persuasive as following the order of the certificate. 4 Monroe, 32.

"Fourth. That construction is to prevail, which is most against the party claiming under an uncertain survey. It is his duty to show, and establish his corners. Preston's Heirs v. Bowman, 2 Bibb, 493. From which it will follow that he who sets up and relies on an outstanding claim, must show that it embraces the land in contest, and should not succeed by using it, when it is uncertain whether it embraces it or not."

The foregoing language was quoted with approval in Creech v. Johnson, 116 Ky., 448. See, also, Davis v. Commonwealth Land & Lumber Co., 141 Fed. Rep., 776.

In Thornberry v. Churchill, supra, the court said:

"The order in which the surveyor gave the lines and corners in his certificate of survey, is of no importance; to find the position of the survey by reversing the courses, is as lawful and persuasive, as by following the order in the certificate of survey. The cases adjudged upon that point, are conformable to reason and practical utility, in guarding against mistakes and destruction of corners by fraud, accident and the elements."

In Morgan v. Renfro, supra, this court laid down the following rule for locating a lost corner:

"From one of the adjacent corners which remain, the courses and distances of the lost lines ought to be run, as called for in the plat and certificate of survey, and, if they close with the other adjacent corner which remains, the true situations of the lost corners and consequently the true situations of the lost lines will be satisfactorily ascertained. But, if the courses and distances thus run do not close the survey, it must be accomplished by running the same courses, and either lengthening or shortening the distances, as each case may require, and in proportion to the length of each line, as called for in the plat and certificate of survey. And, if the survey can not be made to close by this means, then, and not otherwise, a deviation from the courses called for must also aid in accomplishing the purpose."

Applying these rules to the facts of this case, we find that the eleventh corner was clearly established by a beech and maple, and the parties have substantially agreed that the twelfth corner is established, in as much as there was a chestnut tree found lying at this point when the survey in this case was made, although it was so badly burned that it was impossible to tell whether or not it was marked as a corner tree. The thirteenth and fourteenth corners of this survey call for unfound stakes. Leaving the fourteenth corner, the next call is N. 40 E. 150 poles to a beech and chestnut, which should be the fifteenth corner. Neither beech nor chestnut can be found at the end of the line thus called for, and there is no proof that they were ever there, or anywhere near there. The appellants, therefore, rest their case upon a simple platting of the survey, by stopping at the end of the fifteenth call, which would be at

the lower point 15; and then by following the survey out to the seventeenth corner according to the calls and distances, and thence arbitrarily to the beginning, disregarding the last call and distance. We can not agree with this contention of the appellants, but are of opinion that the circuit judge properly held that this fifteenth corner is a lost corner, and is of no greater dignity than the unfound stake corners on either side of it. The circuit judge followed the rule in Morgan v. Renfro, by carrying out the thirteenth and fourteenth lines according to the calls and distances of the survey, and then by reversing the calls and lines from the beginning, he gave the seventeenth and sixteenth lines their bearing and full distance called for, ending at the point S. therein. To close the survey it was then only necessary to extend the fourteenth and fifteenth line according to their bearings until they intersected at the upper corner 15 in the circle. This closed the survey and preserved it in its original shape, as called for by the patent.

We are of opinion that the circuit judge properly applied the rule of law to the facts of this case, and, in doing so, found that appellants' survey did not include the land upon which the trees were standing. The appellants having failed to show their title to the contested area, their petition was properly dismissed.

Judgment affirmed.