## May, et al. v. Wolf Valley Coal Company.

(Decided December 17, 1915.)

### Appeal from Breathitt Circuit Court.

1. Boundaries—Courses and Distance—When Distance Preferred.— The rule that in location of patents distance should yield to course is not invariable, but distance may be preferred to course where the facts clearly show that the mistake is due to an error in the course instead of in the distance.

2. Boundaries—Corners—Natural Object.—Where a call is for a natural object and within the line of another survey, the call cannot be extended beyond the natural object, although the line may not reach the other survey.

3. Boundaries—Location of—Patents—Evidence—Finding of the Court.—In an action involving the location of certain patents, evidence considered and held to sustain the location fixed by the court.

4. Boundaries—Location—Question for Court.—Where the facts are admitted, the proper location of a patent is for the court.

O. H. POLLARD, E. C. HYDEN and J. P. HOBSON & SON for appellants.

CHESTER GOURLEY and G. W. FLEENOR for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

This action by plaintiffs, James May and John Moore, against defendant, Wolf Valley Coal Company, involves the title to a small tract of land located in Breathitt County on the North Fork of the Kentucky River. At the conclusion of the evidence, the trial court peremptorily instructed the jury to find for plaintiffs as to three-tenths of an acre of ground and dismissed the petition as to the remainder of the land in controversy. Plaintiffs appeal.

Plaintiffs claim title under a patent for 50 acres granted to Allen Moore on September 16th, 1847. Defendant claims under certain patents issued to Joseph Spencer prior to the issue of the Allen Moore patent. Plaintiffs claim no lands other than those embraced in the Allen Moore patent. Therefore, the real question is the proper location of that patent and no question of adverse possession is presented.

The description in the Allen Moore patent is as follows:

"(1) Beginning on the south side of the North Fork of the Kentucky River at a beech; thence up said river S. 27 E. 38 poles to three poplars; (2) west 40 poles to a double lynn; (3) thence south with a line of a survey made in the name of Nimrod McIntosh 207 poles to a corner of the said survey; (4) thence W. 40 poles to a stake; (5) N. 3 E. 239 poles to a stake; (6) thence E. 47 poles to the beginning."

The Nimrod McIntosh survey called for in the above patent was made on September 28th, 1824. It calls for 50 acres and the description is as follows:

"(1) Beginning at the mouth of a drain on the south side of said fork on three poplar trees at the first Narrows below said McIntosh field; thence S. 60 E. 30 poles to a poplar, hickory and beech trees, the beginning corner to a 32-acre survey made in the name of said McIntosh; (2) thence with the line of same S. 52 W. 12 poles to a stake; (3) thence S. 21 E. 61 poles to a white oak; (4) thence S. 32 W. 150 poles to a beech and white oak; (5) thence N. 207 poles to a stake; (6) thence E. 40 poles to the beginning."

The 32-acre McIntosh survey called for in the McIntosh survey of 1824 was made on March 13th, 1810, and

patent issued therefor in 1816.  The patent describes the land as follows:

"(1) Beginning at a poplar, two walnuts and beech on the south bank of said fork 90 poles as said fork meanders below where Nimrod McIntosh now lives; thence up said fork as it meanders S. 65 E. 56 poles; (2) S. 38 E. 14 poles; (3) S. 18 E. 20 poles; (4) S. 35 W. 22 poles; (5) S. 52 W. 180 poles to a forked elm, one other elm and poplar on the bank of said fork; (6) thence N. 38 W. 20 poles to two white oaks and beech on the side of the ridge; (7) thence N. 52 E. 150 poles to a beech and white oak; (8) thence N. 21 W. 60 poles to a stake; (9) thence N. 52 E. 12 poles to the beginning."

The Nimrod McIntosh patent of 1816 for 32 acres, the Nimrod McIntosh patent of 1824 for 50 acres, and the Allen Moore patent of 1847 for 50 acres, all lie on the south side of the North Fork of the Kentucky River, a short distance above the mouth of Wolf Creek, in Breathitt county.  The McIntosh patent of 1816 for 32 acres lies next to the river; next to it is the McIntosh patent of 1824; and just back of the McIntosh patent of 1824 is the Allen Moore patent of 1847.

Plaintiffs do not claim adverse possession of any land outside of the Allen Moore patent.  They merely claim to the line of that patent, wherever it may be located. The question at issue turns on the proper location of that patent.  If located as claimed by plaintiffs, it covers the land in controversy; if located as claimed by defendant, it covers only three-tenths of an acre of the land in controversy.  The accompanying plat will explain the respective claims of the parties.  The location claimed by plaintiffs is C-1-6'-D-E-F'-C.  The location as contended for by defendant is C-1-6-D-E-F-C.  There is no dispute as to the proper location of the McIntosh patent of 1906. It begins at 2 on the plat and runs with the river to the point O, thence to B, thence to D, thence to 4, thence to 3, and thence to the beginning.  It appears, however, that if the course of the line from O to B be followed, it will lead across the river to the point A, and that the course of that line has to be changed to B in order to reach the corner called for, which is admitted by the parties to be the correct corner.  The McIntosh patent of 1824 begins at the point 1 and goes to 2, thence to 3, thence to 4, and thence to D.  To reach the point D, however, the course of the fourth line is changed to

reach the admitted corner. There is a dispute between the parties as to the location of the sixth corner. Plaintiffs claim that it should be at the point 6', while defendant claims that it should be at 6. To sustain their contention plaintiffs insist that distances should yield to courses and that the proper way to reach the sixth corner is to run the lines from the known corners, 1 and 2, according to the courses fixed in the patent, and their intersection 6' will be the corner of the survey. Bryan v. Beckley, Lit. Sel. Cas., 93; Brashears v. Joseph, 108 S. W., 307; Chambers v. Tharp, 93 S. W., 627; Kerr v. DeLaney, 91 S. W., 288; Limbert-Driskell v. Dixon, 143 Ky., 759; Combs v. Valentine, 144 Ky., 184; Williams v. Brush Creek Coal Co., 149 Ky., 188. For the same reason it is contended that the sixth corner of the Allen Moore survey should be at F', or the point of intersection of the lines run according to the courses of the patent from the known corners, C and E. While, as a general rule, the principle contended for by plaintiffs is undoubtedly correct, yet it is not the invariable rule that distance yields to course. On the contrary, it is well settled that where the facts clearly show a mistake in course instead of distance, the distance in which no error appears should be preferred to the course which is shown to be erroneous. Preston, et al. v. Bowmar, et al., 2 Bibb, 493; Blight v. Atwell, et al., 4 J. J. Marshall, 278; Davies v. Wickstrom, 56 Wash., 154, 105 Pac., 545, 134 Am. St. Rep., 1100; Preston v. Bowmar, 6 Wheat., 580, 5 L. Ed., 336; Loring v. Norton, 8 Me., 61; 4 R. C. L., sec. 44, page 108. In discussing the question in the case of Preston, et al. v. Bowmar, et al., *supra,* the court used the following language:

"As, therefore, when the necessity of presuming a mistake of distance in some, or, of course, in others of the lost lines, is produced by the mistake which is found in the length of the lines extant, we adopt the presumption of a mistake in distance rather than in course; so, by a parity of reason when the same necessity is produced by the existence of a mistake in the course of the lines extant, it would seem proper to presume a mistake in the course rather than in the distance of the lost lines. In this way the necessity of presuming a mistake of either course or distance, will be made to operate according to the cause which produced it."

In the case of Preston v. Bowmar, 6 Wheat., 580, 5 L. Ed., 336, the United States Supreme Court said:

"It may be laid down as an universal rule, that course and distance yield to natural and ascertained objects. But where these are wanting and the course and distance cannot be reconciled, there is no universal rule that obliges us to prefer one or the other. Cases may exist in which the one or the other may be preferred upon a minute examination of all the circumstances."

Applying the foregoing principles to the facts of this case, it is perfectly apparent that the surveyor of the McIntosh patent of 1816 made an error in the fifth line of that survey, and in order to reach the admitted corner, the fifth line should run from O to B, instead of from O to A. The necessary effect of this was to change the line from D to 4. Indeed, if the correct course of that line were followed, it would go from 4 to 5. It being clear that there is an error in the course of the line from D to 4, which necessarily affects the course of the line from D to 6, we conclude that the distance of the last line of the patent, in which there is no error, should be preferred to the course of the preceding line in which an error clearly appears. In other words, the fifth or preceding line should run from D to 6, a point 40 poles west of the beginning corner, 1. It follows that the proper location of the McIntosh patent of 1824 is 1-2-3-4-D-6-1.

Even if we entertained some doubt as to the foregoing method of locating the sixth corner of the McIntosh patent of 1824, there is one controlling circumstance which would necessarily fix the second corner of the Allen Moore survey at that point. The second call of that patent is: West 40 poles to a double lynn. The third call is: Thence south with a line of a survey made in the name of Nimrod McIntosh 207 poles to a corner of the said survey. It is admitted by the parties that at a point about 40 poles west from the point 1, the second corner of the Allen Moore patent and the first corner of the McIntosh patent of 1824, is a double lynn, which is marked as a corner. That being a natural object and, therefore, a fixed corner, the second call of the Allen Moore survey could, under no circumstances, be extended beyond that point, even though it failed to reach the line of the McIntosh patent of 1824, and from that point the next call of the patent would have to run to the fixed corner at

D, regardless of whether it followed the line of the McIntosh patent of 1824. Hopkins v. Paxton, 4 Dana, 36: Therefore, the third corner of the Allen Moore patent must necessarily be fixed at the point 6 instead of at the point 6'. It is also clear that the course of the third line of the Allen Moore patent must be changed from due south several degrees to the west, in order to reach the point D. The course of the fifth line of that patent is N. 3 E., or practically parallel with the line 6-D. The change in the course of the line 6-D necessarily affects the course of the corresponding or parallel line, E-F. There being a clear error in the course of the line E-F, its course should give way to the distance of the last line. Accordingly, we conclude that the lost corner should be found by reversing the course of the last line and running thereon the distance called for, or 47 poles from the beginning, which carries you to the point F; and the fifth line of the Allen Moore survey should be located by connecting the points E and F.

It is the rule that patents should be construed most strongly against those who claim under them. Should we adopt the view of plaintiffs, the reverse would be true. We would have to ignore the fixed corner at 6 and extend the second line of the Allen Moore patent for double the distance called for to 6'. We would also have to double the distance of the last line of the Allen Moore patent. The result would be to give plaintiffs almost twice as much land as their patent calls for. While it is doubtless true that quantity is the least controlling element in determining the location of a patent, yet, in a doubtful case, every circumstance is entitled to consideration. We, therefore, conclude that the proper location of the Allen Moore patent is C-1-6-D-E-F-C. While, ordinarily, the location of a patent is for the jury, yet, where the facts are admitted and the only question involved is the correct application of well-known principles of law to the facts, the question is for the court and not for the jury. Kerr v. DeLaney, et al., 91 S. W., 286; Bryant v. Strunk, 151 Ky., 97, 151 S. W., 381; Pendergrass v. L. & N. R. Co., 164 Ky., 740; City of Georgetown v. Lynn, 165 Ky., 840. As the trial court located the Allen Moore patent in accordance with the principles above set out, we perceive no reason for disturbing the judgment.

Judgment affirmed.