**FORDSON COAL CO. v. WILSON et al.**
**No. 5274.**

Circuit Court of Appeals, Sixth Circuit.
March 20, 1930.

Cleon K. Calvert, of Pineville, Ky. (J. G. Bruce, of Pineville, Ky., and Clifford B. Longley and Wallace R. Middleton, both of Detroit, Mich., on the brief), for appellant.

Martin T. Kelly and William Low, both of Pineville, Ky. (Low & Bryant, of Pineville, Ky., on the brief), for appellees.

Before MOORMAN and HICKENLOOPER, Circuit Judges, and KILLITS, District Judge.

HICKENLOOPER, Circuit Judge.

This cause was originally begun in the District Court as an action of trespass to try title to real estate. The defendants were in possession. The action was thus at law, trial before a jury was begun, the evidence was submitted, and the jury disagreed. Thereupon the parties stipulated "that this cause be now transferred to equity." It was submitted to the judge upon the record already made up, without repleading of any sort, and an opinion was subsequently delivered finding for the defendants. In the absence of request by counsel, no separate findings of fact were made by the court. The plaintiff appeals from the judgment which followed.

█ Certainly, as pleaded, the action falls within none of the recognized grounds of equity jurisdiction. No equitable relief is prayed. The plaintiff asks damages for unlawful trespass and detention, and for a writ of possession. Such legal relief was adequate, and the stipulation of parties, approved by the court, can be regarded only as a waiver of jury trial and as a submission of

the case to the court without a jury. So construed, the absence of special findings of fact leaves the questions of fact and conclusions of law, here argued, not now reviewable. Fleischmann Construction Co. v. U. S., 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; Oyler v. Cleveland Co., 16 F.(2d) 455 (C. C. A. 6); Ocean Acc. & Guar. Corp. v. Pearson, 37 F. (2d) 896 (C. C. A. 6, decided February 5, 1930).

But we have carefully examined the meritorious questions argued, and, apart from the foregoing technical obstacle to the contentions of appellant, we are of the opinion the judgment must be affirmed. The chief defense asserted was the existence of an outstanding title, superior to that of plaintiff, which operated both to defeat the plaintiff's claim of title, and also brought the lands in question specifically within the exceptions in the deeds under which plaintiff claimed. In addition to this main contention, however, it is exhaustively argued by defendants, and as strenuously opposed by plaintiff, that the defendants have acquired title by adverse possession; that the burden rested upon the plaintiff to affirmatively show, not only a good prima facie title, but also that the lands in suit were not within any of the exceptions in the deed; that the plaintiff had failed to sustain this burden; that where the lands claimed were composed of several adjoining but separate parcels, the adverse possession of one would extend to an adjoining boundary subsequently acquired, but not independently occupied; and that, being in adverse possession of defendants at the time the plaintiff acquired title by judicial sale, as to one source, and under the Kentucky Forfeiture Act, as to another source, plaintiff's deeds were champertous and void under section 210 of the Statutes of Kentucky, known as the Champerty Act. These various contentions we find it unnecessary to decide and unprofitable to discuss. Although the defendants cross-petitioned "that they be adjudged the owners of the land," by adverse possession, the District Court did not decide this issue, no exception was taken to its failure to so decide, and no cross-appeal is prosecuted by defendants. These various questions are therefore irrelevant to the issue before us, except as they may present additional reasons for lack of title in plaintiff, and thus become important only if the chief contention of defendants, upon which the District Judge decided the case, cannot be supported.

The plaintiff claims under two sources: (a) Grant No. 46,701, from Kentucky to John H. Cheever for 206,800 acres of land, dated June 14, 1872; and (b) a grant from Virginia, for 90,000 acres, to Benjamin Say, dated April 15, 1788. Among the mesne conveyances under which plaintiff claims was a judicial sale of the Cheever grant in which the deed specifically excluded lands "within surveys and patents for land prior in date and superior in legal effect to the survey and patent of said Cheever." Under this exception, as well as section 4704 of the Kentucky Statutes, the defendants chiefly rely upon four patents which, conjointly, and properly located with reference to each other, are said to include the lands in question. These are: (1) A grant to A. Moorehouse for 50,000 acres, entered November 11, 1784, surveyed March 29, 1796, and patented February 20, 1799; (2) a grant to Joseph Carey for 5,000 acres, entered November 11, 1784, surveyed April 30, 1796, and patented September 21, 1797; (3) a grant to Elisha Freeman, for 262½ acres, entered November 11, 1784, surveyed May 2, 1796, and patented March 9, 1797; and (4) a grant to Joseph Carey (as assignee of Philip Barbour), of 10,000 acres, entered December 3, 1784, surveyed July 6, 1796, patented February 24, 1798. Since in each of these four grants entry antedated the entry in the case of the Ben Say patent, they would likewise defeat plaintiff's claim under that patent if, when properly located, they included the lands in controversy. Cf. Hart's Heirs v. Young et al., 3 J. J. Marsh. (Ky.) 408, 414. Thus the principal contentions of counsel have turned upon the proper location of these four grants, the location of the fourth corner of Moorehouse being of main importance, and, having located the Moorehouse patent, the proper location of the other three being of secondary but almost equal weight.

Before considering the facts connected with the entry, survey, and location, it is advisable to refer briefly to the purpose and function of, and method of approach by, the court in locating a patent. We concur in the statement of the Court of Appeals of Kentucky that: "The supreme task of the court in locating a patent is to ascertain the intention of the parties at the time of making the survey, and to adopt the location which the parties intended to make upon the ground at the time." Kentucky Union Co. v. Shepherd, 192 Ky. 447, 451, 234 S. W. 10, 11. As there pointed out, numerous rules have been established in aid of construction and location. Other considerations being equal, courses and distances both yield to calls for natural objects which may be located, and ordinarily

distance yields to course, when necessity requires, in order to close the survey. But it is the composite of all the evidence from which the intention must be deduced. The terms of the entry, the natural objects called for, whether they may be located at or near the given distances upon the courses stated, the plat of the survey, its obviously intended shape, the acreage intended to be included within the boundaries, the calls for adjoining surveys made about the same time or by the same surveyor, and all other facts and circumstances are to be given their true weight in arriving at the ultimate decision of intention. None is absolutely controlling or alone determinative of the issue, unless it be the call for natural objects definitely and indubitably located. Cf. Preston's Heirs v. Bowmar, 6 Wheat. 580, 5 L. Ed. 336; May et al. v. Wolf Valley Coal Co., 167 Ky. 525, 180 S. W. 781; Rowe v. Kidd, 259 F. 127, 134, 135 (C. C. A. 6).

The first evidence of intent as to the Moorehouse tract appears in the entry where the lands are described as "lying on the north west side of Cumberland River, to begin at a distance of 5 miles above the ford of Cumberland (where the Kentucky path crosses said River) when reduced to a straight line, thence to run off from the bank of the River, at right angles to the same, the distance of 3 miles for a beginning, thence to run up the River nearly at the same parallel distance from the same ten miles when reduced to a straight line, thence from the extremities of said line out at right angles from the River and from said line of *prackticable* so far as will give the quantity by excluding all other entries." It was this entry which the surveyor intended to survey, and the predominating characteristics of the parcel are that it shall be rectangular in shape, lying northwest of the Cumberland river, with the longer line of ten miles substantially parallel with such river.

The survey describes the first three lines as follows: "Beginning at a poplar, beech and dogwood standing about thirty poles from the bank of said (Straight) creek on the East side near a small drain; thence N. 75 E 400 poles to a beech and poplar standing on the point of a ridge at 'B'; thence N. 55 E 1300 poles, crossing the creek a number of times to the mouth of a fork of said creek, in all 1600 poles to a sugar tree standing on the East side of the creek at 'C'; thence N. 33 E 1300 poles, crossing the creek three times to a beech and sugar tree, standing near a noted Large Encampment and about 100 poles above the forks of said creek at 'D.'" From this last point (fourth corner) a line is run N. 42 W. 2308 poles; thence S. 48 W. 3200 poles (10 miles); and thence S. 42 E. 2300 poles to the place of beginning. Here again we have an expression of intent to cover a substantially rectangular parcel, the longer side being 10 miles in length, and the fourth line, given a bearing of N. 42 W., forming a right angle with a line connecting the first and the fourth corners.

The plat shows the point of beginning to the east, possibly 200 poles, of the mouth of the first of four streams shown entering this right fork of Straight creek from the north. This branch is admitted to be Elliott's branch. The next two are shown entering within the limits of the second line of the survey, the first a short distance eastwardly of the second corner and the other about (roughly) where the call is made in this line "to the mouth of a fork of said creek." The fourth stream entering the creek from the north is shown just before reaching the fourth corner. The second stream above mentioned is Kettle Island creek, the third is Mill creek (possibly inaccurately located on the plat), and the fourth is claimed by plaintiff to be Stony fork, the largest tributary of the right fork of Straight creek. The plat also shows Straight creek as lying well to the northward (possibly more than 100 poles) of the third line for about one-half of its distance. It is the defendants' contention that Stony fork and Ben branch enter in this last-mentioned stretch of Straight creek, and that they are not shown on the plat because they are to the interior of the survey and were probably hidden from the actual line by heavy timber; that the fourth stream shown entering from the north is Big run; that the "noted large encampment" (as proved by reputation) lay to the northeast of Big run; that the call for the "mouth of a fork of said creek," 1,300 poles along the second line, refers to a small fork entering from the east or southeast, and not to Mill creek; and that the obvious error of the surveyor lay in platting the stream itself so that a line from the first to the fourth corner would have a bearing of N. 48 E. The head of the stream really bears more to the eastward; thus, upon defendants' contention, the first two lines being located upon the courses and approximate lengths given, it is necessary only to change the course of the third line, *retaining its approximate distance*, to reach the fourth corner obviously intended.

The starting point is located by defendants to the satisfaction of the court. We are of the opinion that the evidence, the admissi-

bility of which was disputed, was admissible as reputation to prove the location of the "noted large encampment," although hearsay declarations of the particular decedents as to the "location of the Moorehouse fourth corner" may not have properly come within the exception to the hearsay rule. See Wigmore on Evidence, §§ 1563–1566. This we need not decide. Conceding that the bearings of the fourth, fifth, and sixth lines must be retained, the contention of the plaintiff that the call to the "mouth of a fork of said creek" in the second line must necessarily refer to Mill creek, that the fourth stream shown on the plat as entering the creek from the north must be Stony fork, for the reason that the surveyor cannot be assumed to have left unplatted the largest tributary of the creek, that by taking a starting point nearer to Elliott's branch and shortening each line by about one-third its distance courses may be retained and the site of the encampment placed in the bottom land at Stony fork (without other supporting evidence); and that such location is required by the plat, and by the doctrine that course will, where possible, prevail over distance, does not as favorably recommend itself to us as the position of the defendants. To adopt plaintiff's location would largely change the shape of the inclosure, reduce the acreage from 50,000 acres to about 35,000, shorten the fifth line from 3,200 poles (the ten miles of the entry, plat and patent) to only 2,200 poles, vary the more probable starting point, wholly disregard the evidence as to the site of the "large encampment," and otherwise conflict with what seems the obvious general intent. We think that it is far more probable that the mistake was made in the plat, in locating Mill creek from field notes which mentioned only "a branch," and in meandering the creek for a distance of approximately 10 miles, running the fourth line at a bearing of N. 42 W. and then assuming, when the plat was drawn, that this bearing would form a right angle with a line connecting the first and fourth corners, and forcing or approximating, also when platting, the bearing of the third line to produce this result. Both general and specific intent seem to us more clearly disclosed by the defendants' location; and certainly we could not say, even were the question open, that the District Judge was wrong in so deciding.

The mistake of the same surveyor in stating the courses in the surveys of the Carey 5,000 acre tract, the Freeman 262½ acre tract, and the Carey 10,000 acre tract is even more obvious. These surveys were all made in the same year—Moorehouse, March 29th; Carey (5,000-A.) April 30th; Freeman, May 2d; Carey (10,000-A.) July 6th. They call to adjoin each other and the Moorehouse fourth line, filling the exact length of this fourth line, and it is clear that the bearing of the other survey lines upon this fourth line of Moorehouse should be N. 42 W. instead of N. 42 E. Morriso v. Coghill's Legatees, Sneed Ky. Dec. 322; Helm v. Small, Hardin (Ky.) 369; Doe ex dem. Woods v. Kennedy, 5 T. B. Mon. (Ky.) 174.

So located, it is conceded that plaintiff's title fails, and the judgment of the District Court is affirmed.