## Gooch v. Collins.

(Decided December 4, 1913).

### Appeal from Grant Circuit Court.

1.  Appeal—Record—Instructions.—Errors in instructions are not subject to review where the instructions are not made a part of the record by order of court or bill of exceptions.

2. Appeal—Errors Reviewable—Rejection of Evidence.—Alleged errors in the rejection of competent evidence are not subject to review unless embraced in the grounds for a new trial.

3. Evidence—Identity of Record—Proof of—Agreement of Parties. —Where, by agreement of parties entered of record, a continuance is granted on condition that certain records of a corporation may be introduced in evidence without further proof of identity, defendant cannot complain that such records were so introduced and admitted.

4. Corporations—Stockholders—Fraudulent Sale of Stock—Liability of Directors.—In an action by a stockholder against the president and other directors of a corporation to recover the price which she paid for her stock on the ground that she was induced to purchase the stock by the false representations of an agent made to her with the knowledge and by the authority of the president and directors, evidence examined and held to sustain a verdict in favor of plaintiff.

RICHARD G. WILLIAMS and M. D. GRAY for appellant.

CLORE, DICKERSON & CLAYTON and O. S. HOGAN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Abe Tuttleman had a formula for making what was called "Anti-Hot-Box Axle Grease." The Queen City Manufacturing Company was organized under the laws of Ohio for the purpose of manufacturing and vending the grease. Its capital stock was fixed at $100,000, divided into 2,000 shares of the par value of $50 each. At the time of the organization of the corporation, J. Glascock subscribed for ten shares, J. H. Dickey eight shares, Robert Childers five shares, J. L. Kohl and D. Linn Gooch one share each, making a total of 25 shares. The remaining 1,975 shares were issued to Abe Tuttleman for the formula which he transferred to the corporation. Of the stock so issued to Tuttleman he transferred to D. Linn Gooch 499 shares, J. Glascock 190 shares, J. H. Dickey 191 shares, and Robert Childers 95 shares. Tuttleman retained 500 shares and transferred 500 shares to Dickey and Childers, trustees. The latter stock was known as treasury stock. All the money that the corporation received was $1,250, which was paid for the first 25 shares of stock. The foregoing proceedings were had on February 27, 1909. On the same day a board of directors was elected, and immediately thereafter the board proceeded to elect D. Linn Gooch president, Robert Childers

secretary-treasurer, and Abe Tuttleman general mana-
ger. Their respective salaries were fixed at $1,200 a
year, payable on the first of each month.

Something like $5,000 worth of the stock of the com-
pany was sold. Among the purchasers was the plaintiff,
Phoebe K. Collins, who purchased 30 shares of stock
from John R. Long, who claims to have been the agent
of the company. Pleading a conspiracy on the part of
Robert Childers, D. Linn Cooch and the other incor-
porators to organize a worthless corporation for the
purpose of defrauding the public, and that she purchased
the stock in question from an agent of the corporation,
who was authorized fraudulently to represent to her and
other intended buyers that the corporation was in a
flourishing condition and the stock would pay a large di-
vidend, when as a matter of fact the corporation was
doing no business at all and the stock was utterly worth-
less, and that she relied upon his representations and
purchased the stock, and would not have purchased it
except for such representations, plaintiff, Phoebe Collins,
brought this action against Robert Childers and D. Linn
Gooch to recover the purchase price of the stock. The
defendant, D. Linn Gooch, denied the allegations of the
petition. From a judgment in favor of plaintiff for the
amount sued for D. Linn Gooch appeals.

According to the evidence for plaintiff, the corpora-
tion did but little, if any, business, and was never a suc-
cess. The stock was utterly worthless. According to the
evidence for the defendant, the company did some busi-
ness at first, and would have done better had the com-
pany been properly managed. Plaintiff, who was a
married woman and had never had any business experi-
ence, says that John R. Long came to her and induced
her to buy the shares of stock for the price of $1,125.
Mr. Long told her it was good stock and would soon be
bringing dividends; that it would not be long before she
would realize money from it. He represented to her that
it was treasury stock. She first gave her note for the
stock, payable to the company. She afterwards paid
the note with a check. The check was made payable to
Robert Childers. In making the sale Long represented
the company. Long did not tell her that any of the
stock had been given him to peddle. Before she gave
her check for the money she had a talk with Robert
Childers on one or two occasions, and he told her that
the company was getting along fine and would be very

prosperous. The certificate given her was signed by D. Linn Gooch, president. Mrs. Collins never saw Gooch and had no dealings with him.

John R. Long testified that he was employed by the company to sell treasury stock. He was employed by Mr. Gooch, the president, and looked to the company for his compensation. While acting in that capacity he sold 30 shares of stock to plaintiff. She gave him a note due August 1, 1909. The note was payable to the Queen City Manufacturing Company. Robert Childers handed witness the note on the morning it was due, and asked him to hand it to Mrs. Collins, who would give a check for it, and to deposit that check to Childers' credit in the Grant County Bank. The check was made payable to Robert Childers individually. No treasury stock, to his knowledge, was issued to plaintiff. The stock issued to her was stock transferred from a certificate in the name of Robert Childers. None of the money was paid into the treasury of the company. When he asked to go to Grant County and sell stock there, Childers and he made an arrangement by which he was to divide his commission with Childers in consideration of Childers furnishing the names of people who would likely take stock. Witness also made several other sales of stock. In all the sales that he made he only spoke of treasury stock. He told the purchasers there was $25,000 worth of stock in the treasury for sale. In reference to his discussion of the merits of the stock with intending purchasers, he says:

"I told them I considered the prospect of the stock would be very fine, and believed if properly managed the company would pay large dividends. I made these statements from the facts given me by Mr. Gooch, and statements made by him to me as to the manner in which he proposed to handle the company's business."

In selling the stock to Mrs. Collins he told her that a large portion of the stock had been taken and paid for, and that the company had ample funds to put the project on the market. He made these statements from statements made to him by the officials of the company. When the note was given the stock was delivered. When he sold the stock to Mrs. Collins he told her that later on if she did not wish to keep it he would endeavor to sell it for her.

Robert Childers, who also testified for plaintiff, testified that prior to the organization of the corporation the,

arrangement was that the people who paid it the $1,250 should have one-fourth of the stock and the treasury should have the benefit of one-fourth, less the expense of selling it, and Mr. Gooch and Mr. Tuttleman were to have one-half. The stock issued to him and Dickey as trustees was to be treasury stock. Before the organization it was agreed that 1,975 shares of that stock should be transferred to Tuttleman. It was also part of the agreement that part of this stock was to be transferred by Tuttleman back to the other members of the corporation. The only money paid to the corporation was $1,250 at the beginning. When Mrs. Collins bought the stock she gave a note for it. The note was turned over to the office by Mr. Long in Mr. Gooch's absence. Witness refused to accept it and Long got offended about it, saying that they were not treating him right. Witness suggested that he issue to Mrs. Collins out of his individual stock the stock which she bought. This was done. A check for $1,125 was made payable to him and was placed to his credit in the Grant County Deposit Bank. Long got $187.50 and witness got $187.50. L. D. Swigget received $750. Witness had traded with Swigget, giving him some grease stock for mining stock, and paid him the $750 in that transaction. Mr. Gooch signed the certificates in blank and left them there to be filled out. Mr. Gooch knew nothing about the arrangement with Mrs. Collins.

Defendant, Gooch, testified that he was acquainted with John R. Long. At the time of the transaction with Mrs. Collins he was in Michigan. Did not know that Mrs. Collins had any stock until he was sued. Did not know whether the corporation got any of the money or not. None of it was put into the treasury with his knowledge. He took one share of stock at the beginning. He got some stock from a man by the name of Tuttleman.

The instructions have not been made a part of the record by order of court or bill of exceptions. That being true, they cannot be considered. Latham v. Lindsay, 112 S. W., 584, 33 Ky. L. R., 985; Rogers v. Zumbiel, 114 S. W., 323.

Certain alleged errors in the rejection of competent testimony are also relied on, but are not subject to review because not embraced in the grounds for a new trial. Finley v. Curd, 62 S. W., 501, 22 Ky. L. R., 1912; City of Louisville v. Lambert, 116 S. W., 261.

Another error relied on is the fact that the trial court permitted the introduction of the minutes of the corpora-

tion without proper proof of the identity of the record. It appears, however, that at a previous term of the court defendant obtained a continuance, and by the consent of the parties, the continuance was granted on the express condition that the minute book, stock register and stock certificate book should be received in evidence "without further proof of identification," and the order granting the continuance so recites. In view of this agreement, defendant cannot complain of the action of the court.

The only other question to be considered is whether or not the evidence sustains the verdict. The facts, which are practically admitted, are as follows: The defendants and the other directors of the corporation agreed beforehand to organize the corporation with a capital stock of $100,000, consisting of 2,000 shares of the par value of $50 each. It was further agreed that J. Glascock should subscribe for ten shares, J. H. Dickey eight shares, Robert Childers five shares, and J. L. Kohl and D. Linn Gooch for one share each, making a total of 25 shares, for which the subscribers were to pay cash. The remaining 1,975 shares were to be subscribed by Abe Tuttleman, who was to pay for same by transferring to the corporation the formula for making axle grease. It was also understood between the parties that when the 1975 shares were issued to Tuttleman he was to transfer to Gooch 499 shares, to Glascock 190 shares, to Dickey 191 shares, and to Childers 95 shares. It will thus be seen that the directors, who were to pay for only 25 shares, were to receive 975 shares for no consideration whatever. After this agreement was entered into, the corporation was organized, and the board of directors immediately proceeded to issue the 2,000 shares. The 25 shares were paid for and issued as above set out. A resolution was unanimously passed authorizing the president and secretary to issue to Abe Tuttleman a certificate for 1,975 shares "paid up." In accordance with their previous agreement, Tuttleman immediately issued to Gooch, Glascock, Dickey and Childers the number of shares above set out. The only cash that was received by the corporation was the $1,250 paid for the first 25 shares of stock. $98,750 worth of stock was transferred in consideration of the formula, which was of but little value. It is apparent, therefore, that the corporation was insolvent from the beginning. With knowledge of these facts Long was sent out to sell 500 shares of treasury stock. Omitting his representations as to the future prospects of the

company, it is clearly shown that he did represent that the stock was good, that the company was doing a good business and had ample funds to put the project on the market. These representations he says were made on the faith of the statements made to him by Gooch and other officials of the company. The case, therefore, is simply this: The defendants knew the stock was worthless. They employed Long to sell the stock. They furnished him information to the effect that the stock was good, that the company had ample means to put the project on the market, and was doing a good business. On the faith of this information he went forth to sell the stock. Relying on his statements, plaintiff was induced to buy. The statements which he made were false. Taking into consideration all the circumstances, we conclude that the evidence is sufficient to justify the conclusion on the part of the jury that the fraudulent representations by which plaintiff was induced to purchase the stock in question were made with the knowledge and by the authority of the defendants. That being true, they should be held personally liable.

Judgment affirmed.