## Carter, et al. v. Elk Coal Company, et al.

(Decided January 23, 1917.)

### Appeal from Bell Circuit Court.

1. Boundaries—Line Between Established Corners—How Must be Run.—A line between established corners must be run from one of these corners to the other on a straight line, although it may run on a different course and describe a much longer distance between these two points than the patent indicates.

2. Boundaries—When Location of Question of Law for Court.—Where the patent as well as the plat described a line as "beginning at a sugar tree at the head of Dean's Branch; thence S. 85 E. 350 poles down the spur between Goodin's and Dean's Branch to a sourwood," the location of this line was a question of law for the court, as there was no dispute as to the location of the sugar tree or sourwood.

3. Boundaries—When Location of Question for Jury.—If the issue is the correct location of a lost corner, or a lost line, or there is a dispute as to where a corner is, or as to the location of a line, and this dispute grows out of facts that are not apparent on the face of the patent or deed, then the question is for the jury.

4. Boundaries—When Should Follow Calls in Patent and Not a Natural Monument Mentioned in the Patent.—Where the patent described the land as beginning at a sugar tree at the head of Dean's Branch; thence S. 85 E. 350 poles down the spur between Goodin's and Dean's Branch to a sourwood, and there was a dispute as to whether the line should run with the top of the spur and its meanders between the sugar tree and the sourwood or on a straight line between these two corners, the patent description should control the location of the line.

5. Boundaries—Evidence of Surveyors—Weight to Which Entitled.—The opinion of surveyors as to the correct location of a line, if

its location is a question of fact, is entitled to considerable weight, but when the location of the line is not a question of fact but a question of law, the opinion of the surveyor is not entitled to controlling weight.

6. Boundaries—Permanent or Marked Objects Control Courses and Distances.—In determining the location of boundaries natural and permanent or marked objects control courses and distances.

7. Boundaries—Conflict Between Meanders of Spur or Ridge and Straight Line.—If a line in a patent called to run "down the crest of a spur," or "on the top of a spur," or "with the meanders of a spur," then the line should be run on the top or crest of the spur, with its meanders from one corner to the other, although the line so run might not be a straight line and the courses or distances very different from those laid down in the patent.

8. Boundaries—Location of Line When There is Conflict Between a Call for a Straight Line and Natural Objects Mentioned in the Call.—When the course and distance in the description call for a straight line between established corners, although the call may further be to run "down a stream" or "down a mountain or spur or ridge," the line must be run on a straight line between the permanent objects mentioned as corners.

9. Boundaries—Straight Line.—Where a line is described as running from one point to another, it is presumed to be a straight line.

10. Boundaries—Plat—Weight to Which Entitled.—The original plat is not only admissible as evidence but is one of the most potent facts which can be adduced to establish the location of the line.

WILLIAM LOW and METCALF & JEFFRIES for appellants.

JAMES M. GILBERT and D. B. LOGAN for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellants to recover from the appellees $6,600, the value of the coal alleged to have been wrongfully taken by the appellees from land claimed by the appellants. The title of the appellants to the land from which the coal was taken was put in issue by the appellees, who themselves set up ownership of the land, and on a trial before a jury, after the evidence for the appellants was all in, the trial judge directed a verdict for the appellees.

The appellants claim the land under a patent issued to Benjamin Goodin in 1853. The Goodin patent purports to contain one hundred acres, and the survey shows that the boundaries are marked by seven lines, but it is agreed by both parties that the only line in dispute is the fifth line beginning "at a sugar tree at the head of Dean's branch; thence S. 85 E. 350 poles

down the spur between Goodin's and Dean's branch to a sourwood.'' On the correct location of this line depend the rights of the parties. If this line should be run as claimed by the appellants, the record before us shows that the land from which the coal in question was taken lies within the boundary of the Goodin patent, but if this fifth line should be located according to the contention of appellees, which was upheld by the trial court, the land from which the coal in question was taken lies outside of the Goodin patent as shown by the evidence in this record.

There is no dispute between the parties that the sugar tree and the sourwood are well established corners in the Goodin patent. The controversy between them grows out of the fact that the appellants insist that the line between the sugar tree and the sourwood should follow with its meanders the top or crest of the spur that extends from the sugar tree to the sourwood, and that lies between Goodin's branch and Dean's branch, running in a southeasterly direction from the sugar tree to the sourwood; while the appellees contend that a straight line should be run from the sugar tree to the sourwood. The accompanying map shows the location of the objects named and the spur, together with the straight line between the sugar tree and sourwood, and illustrates the difference that would result in running the line between these two points with the spur and on a straight line.

Before, however, taking up the discussion of this question, which is the real, and we might say the only, material question, in the case, we may stop to notice the other contention raised by counsel for appellants that a line running with the top or crest of the spur and following its meanders between the sugar tree and sourwood should be treated as the fifth line in the Goodin patent, because the appellants and those under whom they hold, claim to the top of the spur with its meanders between these points and have been in the adverse possession of the land in controversy which lies between the straight line and the top of the spur for such a length of time as to invest them with title, although it should be held that the fifth line of this survey should be run as a straight line from the sugar tree to the sourwood. But an examination of the evidence satisfies us that this claim of adverse possession of the land that

Carter v. Elk Coal Co.

W N E S

8

S. 85 E. 350 poles.

Spur 460 poles.

Sour Wood.

6

Course and distance in survey of 1915.

S. 69 E. 427 poles—course and distance called for in patent S. 85 E. 350 poles.

Course and distance called for in patent S. 85 E. 350 poles.

1

7

Benjamin Goodin patent for 100 acres.
Plat made by surveyor in 1853
on which patent was issued.

2

Sugar tree

5

3

4

lies between this straight line and the top of the spur, if the straight line be the correct line, is not based on facts sufficient to satisfy the requirements of the law in reference to holding land by adverse possession.

The evidence shows that no part of the land lying between the straight line and the spur has ever been enclosed by fencing or cleared or cultivated or occupied by a residence or outbuilding. It has always remained in its wild, original state except that occasionally the appellants and those under whom they claim, cut timber on this land.

The appellants say in their evidence that they always claimed to own the land to the crest of the spur, and with its meanders between the sugar tree and the sourwood, but this was because they believed that was the line between these two points. But they do not assert title to any land not covered by the Goodin patent. It will thus be seen that their claim of adverse possession rests entirely on the fact that they believed that the spur with its meanders was the line, and of course if the spur with its meanders is the line, then the appellants are entitled to the land in controversy under the Goodin patent and to the coal taken therefrom; but if this is not the line, they cannot recover on the ground of adverse holding.

We may also set aside as unimportant the contentions that Reynolds and Megaffey, who secured a patent for land lying on Dean's branch, north of the spur, in surveying and locating their patent, stopped at the crest of the spur and made it the southerly boundary line of their land; and that Daniel Megaffey, in a controversy that arose a few years ago between him and Florence A. Carter, one of the appellants, conceded that the Goodin patent extended to the crest of the spur, because the rights of the parties in this litigation are not to be determined by what Megaffey and Mrs. Carter agreed to or by the location of the lines of the patent issued to Reynolds and Megaffey. The appellants can establish their ownership of this land only in two ways, that is, by paper title or by adverse possession, and according to our view of the evidence they must depend on their paper title; in other words, on the Goodin patent.

The evidence shows that this spur, which may also be called a high ridge, has its origin in the side of a

mountain at or near the sugar tree and runs thence in uneven and irregular lines to the sourwood. Following the meanders of the spur the distance from the sugar tree to the sourwood is 460 poles, while the distance on a straight line between these two points running S. 69½ E. is 427 poles. It will be observed that the course of the fifth line as shown by the patent is S. 85 E. 350 poles, but neither this course nor distance would take the line from the sugar tree to the sourwood. It is shown on the accompanying map that a line running S. 85 E. 350 beginning at the sugar tree would run practically with the spur until the spur makes a sharp turn that takes it down to the sourwood. So that neither a straight line nor a line with the spur could be run from the sugar tree to the sourwood on the courses and distances designated in the patent.

But this fact is not so important, because it being admitted that the sugar tree and the sourwood, which are yet on the ground, are corners in the patent, the line must be run from one of these corners to the other on a straight line, although it may run on a different course and describe a much longer distance between these two points than the patent indicates as there are no corners or marked objects on this fifth line between the sugar tree and the sourwood.

Some question is made that the trial court should have submitted to a jury the issue as to whether this line should run with the crest of the spur and its meanders or on a straight line, but we do not find ourselves able to agree with counsel in this position. We think the location of this line, in view of the fact that there is no dispute as to the corners, depends entirely on the construction to be given to the description in the patent of the fifth line, and this being so, it was purely a question of law.

Thus in Thornberry v. Churchill, 4 T. B. Mon. 29, the court, in holding that the proper construction of muniments of title, when there was no dispute as to the corners, was a matter for the court, said: "The expressions and proper constructions of deeds, patents and written muniments of title, and the aptitude of documents and papers referred to, to satisfy such words of reference are matters of law."

In Cockrell v. M'Quinn, 4 T. B. Mon. 61, the court said: "In cases of boundary which depend upon the

swearing of witnesses, it would, no doubt, be incompetent for the court, by any sort of instructions that might be given to withdraw from the jury a decision upon the weight of the testimony and the facts which the testimony conduces to establish. The actual position and identity of the boundary in such a case would be exclusively a question of fact for the consideration and determination of the jury, and not for the court. But the case now under consideration is not one of that sort. The question for our consideration involves no inquiry into the testimony of witnesses, or any decision upon the facts which such evidence conduces to prove; but, on the contrary, it barely, in the absence of all parol evidence as to marked lines, presents for the determination of the court the construction of the calls for boundary mentioned in the patent of Reynolds, and surely none will pretend that the legal construction of a patent is not a matter proper for the decision of a court whose province it is to decide all questions of law."

In Pendergrass v. L. & N. R. R. Co., 164 Ky. 740, the court said: ''Where the relation of the lines, according to each theory of a survey, is not disputed, and the proper method of making the survey is the only question involved, the question is one of law for the court and not of fact for the jury.'' To the same effect are: City of Georgetown v. Lynn, 165 Ky. 840; May v. Wolf Valley Coal Co., 167 Ky. 525.

It may here be said that it is difficult in many cases to determine when the location of a boundary is a question of law for the court and when a question of fact for the jury. If the issue is the correct location of a lost corner or a lost line, or there is a dispute as to where a corner is, or as to the location of a line, and this dispute grows out of facts that are not apparent on the face of the patent or deed, then the question is for the jury.

Thus it is said in 9 Corpus Juris. 289: ''What are boundaries is a matter of law for the court; where they are, a matter of fact, for the determination of the jury, under proper instructions from the court, unless the facts are admitted, or not in dispute and the only question involved is the correct application of well known principles of law to the facts. In this event the question of location of boundary is for the court. As otherwise expressed, the determination as to what

boundary was intended by the terms of the instrument is a question for the court, while its identity is a question of fact for the jury.'' Illustrative cases on this subject are: Dimmitt v. Lashbrook, 2 Dana. 1; Cockrell v. M'Quinn, 4 T. B. Mon. 61; Burt & Brabb Lumber Co. v. Wilson, 29 Ky. L. R. 488; Thurmond v. Leach, 116 S. W. 300; Sale v. Pulaski Stave Co., 117 S. W. 404; Kerr v. Delaney, 28 Ky. L. R. 1140; City of Georgetown v. Lynn, 165 Ky. 840; May v. Wolf Valley Coal Co., 167 Ky. 525; Ramsey v. Morrow, 133 Ky. 486; Middlesboro Town and Land Co. v. Hurst, 148 Ky. 316; Louisville Property Co. v. Lawson, 156 Ky. 288.

We again repeat that the only question in the case is, how should this line be run between the sugar tree and the sourwood?

H. E. Carter, in describing this spur, said that, ''it is a long, continuous spur, very regular in its trend and sloping gradually with a few slight elevations and depressions running toward the waters of Greasy Creek.'' He further said it was generally a high ridge and starting out of a mountain at or near the sugar tree. He also said that the sugar tree stands near the top of the ridge a little on the Dean branch side. Speaking of the sourwood, he said it was near the base of the spur; in other words, according to his testimony, the sugar tree may be said to stand at one end of the spur and the sourwood at the other, the sugar tree at a high point and the sourwood at a low point.

R. L. Blakeman, the surveyor who made the map which accompanies the record, said that the patent call for the fifth line S. 85 E. 350 poles for the first three-quarters of a mile of this line runs practically on top of the ridge and just a little over it in some places, and a little under it in some places. That in making the survey he considered it to be correct surveying according to the patent, to run the fifth line with the top of the ridge from the sugar tree to the sourwood. In describing this spur or ridge, as he called it, he said it was a high ridge with a well-defined watershed on the top, forming the watershed between Goodin's branch on the one side and Dean's branch on the other. That the sugar tree was not quite on top of the ridge but about two poles over on the Dean branch side. That the ridge from the sugar tree to the sourwood is a continuous, unbroken elevation that declines very rapidly

from a point about one hundred poles from the sourwood until it reaches the sourwood. On cross-examination he said that according to his view this line should be run with the spur from the sugar tree to the sourwood, and that he increased the distance and the acreage over that described in the patent by running on top of the spur instead of down the spur, and that it was 460 poles following the meanders of the crest of the spur from the sugar tree to the sourwood.

The following questions and answers in the evidence of this witness throw some light on the subject: "Q. From this point at the sugar tree at the head of Dean's branch to follow the straight line to the sourwood, you will go down from the beginning? A. You go downward, of course, from the beginning. Q. For over half the distance you will go down, will you not? A. I think so. . . . . The top of the ridge or spur slopes down and goes up a little and then down until you get in about a quarter of a mile of the sourwood, and then it goes decidedly down and gets much steeper." This witness further said that a straight line according to the courses and distances called for in the Goodin patent, would run practically with the meanders of the ridge for about 240 poles from the sugar tree.

J. C. Sproul, another surveyor, said that controlled by the reading of the patent he would run the line between the sugar tree and the sourwood on the top of the spur with its meanders. This witness further said that the plat of the Goodin survey, if it was properly made, should show the shape of the survey, and that the plat of the Goodin survey was in the form intended by the surveyor who made the survey.

F. M. Rees, a surveyor, said the proper way to survey this line was on the top of and with the meanders of the spur. He was asked this question: "Q. A surveyor at the time he surveys and makes a survey always makes what we call a plat, which is a picture of that survey and makes it a part of the record just the same as he makes the calls of the survey a part of the record? A. Yes, that is the intention of it. Q. Isn't that done practically all the time when a surveyor makes a survey? Doesn't he make a picture of the survey he has made or intended to make? A. This is not always done. Some surveyors make false plats as well as false surveys."

E. A. Smith, another surveyor, said that he had run. the line between the sugar tree and the sourwood and that the sourwood stood at the lower end or foot of a continuous spur leading from the sugar tree to the sourwood. That according to his understanding of surveying, and controlled by the language of the patent, he would run this fifth line with the top of the spur.

This evidence develops very conclusively the fact that the highest point of this spur is at the sugar tree and its lowest point at the sourwood, and in commenting on this the trial judge, in giving a peremptory instruction, pertinently said: "The evidence so far shows that both these corners are approximately on this spur between Goodin branch and Dean branch, the sugar tree being near the intersection of this spur with the other mountain and the sourwood at the lower end of the spur. I am inclined to the belief that in the absence of positive language calling for the top of the spur that the line would have to be run a straight line from the sugar tree to the sourwood. This is, generally speaking, *down* the spur, the sourwood being lower down and nearer the creek than the sugar tree and the general direction is down; although to run a straight line is to leave the top of the spur for the greater part of the distance, but is running from one point higher on the spur to another lower down on the spur and is, in a sense, running *down* the spur."

Upon the evidence of the surveyors it is earnestly insisted by counsel for the appellants that as their uncontroverted testimony shows that, according to correct rules in land surveying, this fifth line, calling as it does for a course "down the spur," should be run on the crest of and with the meanders of the spur, this course should prevail. But the opinion of the surveyors cannot be allowed controlling influence in determining this question of law. If it were a question of fact, their opinion would be entitled to considerable weight, but how this line should be run is not, as we have said, a question of fact, but a question of law, to be determined not by the opinions of witnesses, but from the words of the patent, construed in accordance with the principles of law applicable in cases like this. We do not think the opinion of a surveyor on a question of law should be entitled to any more weight than the opinion of any other layman on a question of law, and, plainly, questions of

law are not to be decided by the opinions of either expert witnesses or laymen.

The further argument is strongly pressed that this spur being a natural monument, courses and distances must give way to it and the line be run with the spur, although it may not follow either the course or distance described in the patent. There is abundant authority to support the legal proposition that in determining the location of boundaries natural and permanent or marked objects called for control courses and distances when there is conflict between the natural or permanent objects and the courses and distances called for. Marshall v. Russell, 1 A. K. Mar. 271; Baxter v. Evett's Lessee, 7 T. B. Mon. 329; Lewis v. Durham, 144 Ky. 704; Williams v. Brush Creek Coal Co., 149 Ky. 188; Rock Creek Property Co. v. Hill, 162 Ky. 324.

And of course these authorities would be absolutely controlling if it should be conceded that the crest of this spur with its meanders was the natural monument called for as the fifth line in the patent. So that the decisive question recurs, is the crest of this spur to be treated as a monument called for by this line and according to the meanders of which this line must be run? If the patent call had been at a sugar tree at the head of Dean's branch, thence S. 85 E. 350 poles "down the crest of the spur" or "the top of the spur," or "with the meanders of the spur" between Goodin's and Dean's branches to a sourwood, there would be no room for doubt that the line must be run on the top or crest of this spur with its meanders from the sugar tree to the sourwood, although the line so run might not be a straight line, and the course as well as the distance very different from that laid down in the patent, and the contents of the Goodin patent largely increased in acreage from what it would be if a straight line were run between these points. Courses such as we have indicated following the line of this natural monument would also control the form of the plat, which marks a straight line between the sugar tree and the sourwood, although, as we shall presently point out, the form of the plat made by the surveyor who makes a survey upon which the plat and patent is based, is entitled to great weight in determining the lines of the survey when the lines are not controlled by natural monuments or

marked objects and there is conflict between the lines described in the plat and the lines as they should run if the courses and distances followed in the field notes were adopted.

But the description of this line does not call for "the top or crest of the spur or the meanders of the spur." It calls for a straight line "down the spur." Now, we think it a reasonable presumption that if the surveyor who made this survey and the accompanying plat had intended that this fifth line should run on the top or crest of or with the meanders of the spur, he would have so described it. It would have been as easy to have so described it, if it was intended that it should so run, as it was to describe it as a straight line running down the spur, and the fact that the surveyor described it as running down the spur and not with the top or crest of the spur or the meanders of the spur shows, as we think, that it was not intended that the line should run on top and with the meanders of the spur, but that it should run as described in the patent and plat, as a straight line down the spur between the sugar tree and the sourwood.

Counsel for appellants argue that the words "down the spur" should be construed to mean with the top of the spur and its meanders, but we are not able to give our assent to this construction, which is in direct conflict with the form of the plat as well as with the description in the field notes of the survey which calls for a straight line. In support of the argument counsel call our attention to the following cases:

In Webb v. Bedford, 2 Bibb. 354, the survey described the land as "950 acres on the waters of Licking on Stoner's fork, at the mouth of the third branch above Stoner's on the east side of the creek; beginning at the mouth of the run and running up the creek, thence back, including both sides of the run." In holding that the words "running up the creek" meant with the meanders of the creek, the court, after saying that the words "fork" and "creek" as used in the description were convertible terms, said, "The call, 'running up the creek,' it is conceived must mean running up Stoner's fork with its meanders; because running up the creek on any direct course, when no direct course is expressed or implied, would be adding to the entry, and rendering that vague and uncertain which is not neces-

sarily so. And, although in some cases, a direct course, when up or down a watercourse is called for, may be the proper construction, yet it would not be proper in this case, for the reasons just suggested."

The difference between the description in this survey and the description we have in the case before us is obvious. In that case the only line called for and the only line described was a line "running up the creek," while in this case the survey as well as the plat call for a straight line, giving its course and distance.

In Cockrell v. M'Quinn, 4 T. B. Mon. 61, the description was "beginning fifteen miles from the mouth of said fork, when reduced to a straight line at a small beech, marked with the letters, R. E. B., standing near the edge of said fork. . . . . " (omitting some lines) "thence S. 9 E. 6400 poles to the edge of the aforesaid left-hand or north fork of the Kentucky; thence down the river to these several courses, viz.: S. 51 W. 24 poles, S. 75 W. 360 poles, N. 85½ W. 480 poles, N. 67 W. 140 poles, S. 28 W. 220 poles, W. 800 poles, N. 46 W. 190 poles, S. 79 W. 240 poles, S. 64 W. 640 poles to the beginning; but when reduced to a straight line, is 3,140 poles."

The only question before the court was the correct location of the line running down the north fork of the Kentucky the courses and distances mentioned in the description. It appears from the opinion that the trial judge instructed the jury that this line should be run with the meanders of the river. This instruction was approved by this court, and clearly it was influenced to reach this conclusion by the fact that the line ran "thence down the river these several courses," naming them, which clearly showed that the line was intended to and did follow the meanders of the stream.

In Bruce v. Taylor, 2 J. J. Mar. 160, the plaintiffs derived title from a patent to Marshall for 8,200 acres of land on the Ohio river. "Marshall's patent calls to begin on the Ohio river, and then for certain courses and distances, without any corners, or marked lines, to the mouth of Kinnekenick, and then certain courses and distances without any corners, or marked lines, to a stake on the Ohio river, and then for courses, distances and corners, from the river to the beginning." In holding that the line ran with the river, the court said: "It is our opinion that the river is the boundary. The begin-

ning is on the river; the mouth of Kinnekenick is on the river; the stake called for is on the river; the intermediate courses are in the general direction of the river; no corners are called for; the courses and distances are not accurate, but such as would be called for when intending that the river should be the boundary. . . . . Then, three of the calls are on the river; there are no intermediate marked lines or corners; the general description is, 'to lie on the Ohio.' These facts, alone, would not leave room for any other legal construction of the patent than that the Ohio river, with its sinuosities, is one of the lines of its boundary."

The court, after finding that the river was left without any competition with any other line and was established as a true line, by many circumstances existing which could not be reconciled by fixing any other boundary, said: "If the river had not been the boundary, the lines up the river would have been marked; the courses specially designated, and the distances measured. To have done these, was as much the interest of the patentee, as it was the duty of the surveyor. The lines and corners which were not on the river, nor intended to be, are marked. This fact alone, should be almost, if not altogether, conclusive.

"But in addition to all this, the original survey is exhibited, and shows the river as the northern boundary. This is decisive. The survey is the foundation of the patent. . . . . It does not contradict, but only renders fixed and certain some of the calls in the patent."

In Bramlett v. Howard, 29 Ky. L. R. 497, the boundary was, omitting some parts, "Beginning at a double maple, two beeches and two black gums on the north side of said fork (Clover fork), . . . . thence N. 480 poles to a stake; thence N. 66 E. 630 poles to a stake; thence N. 20 W., crossing the big Black Mountain, 650 poles to a stake on the Poor fork; thence running up the same N. 80 E. 1920 poles to a stake." And the court said the solution of the pivotal question in the case, "Depends on the proper construction of the two calls before the last call in the Caywood patent, which reads as follows: 'thence N. 20 W. crossing the Big Black Mountain 650 poles to a stake on Poor fork; thence running up the same N. 80 E. 1920 poles to a stake,' " and held that the line "thence running up the

same (Poor fork) N. 80 E. 1920 poles to a stake" must be run with the meanders of the watercourse, and manifestly this was correct, because this line called to run with the Poor fork. That was the only description of this line in the patent. This case would be like the one we have if the description had called for a straight line from a stake on Poor fork to a stake on Poor fork.

Another case illustrating when a line should be run with the meanders of a stream or other natural object is Calk v. Stribling, 1 Bibb. 122. In this case the beginning of the survey was at "The mouth of a small branch emptying into the river about 20 poles above a cabin built by William Calk and running down the said river, including his improvements, and running off at right angles northwardly." In reference to the language "running down the said river" the court said: "Running down the said river and off at right angles northwardly at first view may be thought uncertain calls, but as no course is expressed or implied, the rational construction is down the river with its meanders, or binding thereon." In that case it will be observed that there was no course or distance expressed in the call that ran down the river, and hence the court said that the call should run with the meanders of the river. But in the case we have, a course and distance is expressed in the call that runs down the spur, and this is the point of distinction between this case and the Stribling case.

In the cases of Kentucky Coal Lands Co. v. Mineral Development Co., 219 Fed. 45, and Brown v. Huger, 21 Howard, U. S. 305, 16 L. ed. 125, the court held on the facts of these particular cases that the meanders of the natural objects called for in the description controlled the courses and distances, and that the courses and distances must yield to the natural objects when there were inconsistencies between the natural objects and the courses and distances. That this is the law in this state, there is no question: Fleming v. Kenney, 4 J. J. Mar. 155; Pitman v. Nunnelly, 17 Ky. L. R. 793; Bailey v. McConnell, 12 Ky. L. R. 473; Kentucky Land Co. v. Crabtree, 113 Ky. 922; Gilbert v. Parrott, 168 Ky. 599.

But when the course and distance in the description call for a straight line between two established corners, although this line may run down a stream or down a mountain, or spur, or ridge, or other natural boundary,

the line must be run according to the description in the deed or patent and on a straight line between the permanent objects mentioned as corners. If this were not so, this fifth line with its courses and distances would be entirely ignored, and we know of no rule that would authorize the elimination of a line described by courses and distances that runs directly without intervening calls or corners from one established corner to another established corner. An illustrative case on this point is Yoder v. Swope, 3 Bibb. 204. In that case the description was:

"A tract in Shelby county, and binding on Brashear's creek, containing 156 acres, more or less, and bounded as follows, viz.: Beginning at two hoopwoods, etc., and containing a minute description of the courses and distances of the several lines and corners, to the last corner, on the island of Brashear's creek; and describing the last line as running from thence to the beginning. The beginning corner stands on the north side of the creek, and by extending a direct line from the corner on the island to the beginning will include the land in question. Whether, therefore, the last line should be a straight line from corner to corner, or conform to the course of the creek, is the only point of any difficulty in this branch of the cause. On the part of Yoder it is urged the description in the deed *binding on the creek,* excludes the construction of the last line being straight, but requires it should conform to the course of the creek. It is evident, however, a line cannot be extended from the corner on the island to the beginning and bind on the creek. The corner on the island stands some distance from the creek, and a line extended therefrom to the beginning must necessarily cross the creek. When, therefore, it is apparent that the description *binding on the creek,* forms no part of the boundary, as particularly described in the deed, and cannot be conformed to by complying with the express calls of boundary, it seems pretty clear that it should be considered as yielding to the more special specification of boundary, and that the last line should be extended in a straight direction from the corner on the island to the beginning." To the same effect is Rains v. Rains, 14 Ky. L. R. 650.

In 9 Corpus Juris. 167, we find this statement as to the effect of a straight line: "Where a line is described

as running from one point to another, it is presumed, unless a different line is described in the instrument or marked on the ground, to be a straight line. . . . . The rule of surveying, as well as of law, is to reach the point of destination by the line of shortest distance. And lines should never be deflected, except in order to conform to the intention of the parties." And this rule is supported by many authorities cited in the note to the text from which we have quoted as well as by 4 A. and E. Ency. of Law 805.

In addition to what has been said, the construction that the fifth line of this Goodin patent is a straight line from the sugar tree to the sourwood and not a line running with the meanders of the spur, is strongly fortified by the plat made by the surveyor who surveyed this patent. As said in Mercer v. Bate, 4 J. J. Mar. 334, "The original plat is not only admissible as evidence, but it is intrinsically one of the most potent facts which can be adduced, and hence it has been often admitted by this court as always either preponderating or alone conclusive." To the same effect are Bell County Land & Coal Co. v. Hendrickson, 24 Ky. L. R. 371; Alexander v. Lively, 5 T. B. Mon. 159; Bryant v. Strunk, 151 Ky. 97; Hogg v. Lusk, 120 Ky. 419; Bruce v. Taylor, 2 J. J. Mar. 160; Hardaway v. Webb, 172 Ky. 589.

Upon the whole case, we are convinced that the judgment of the lower court was correct, and it is affirmed.