## Merritt v. Palmer.

Jan. 16, 1942.

142

Dwight Pendleton, Edward C. O'Rear and William A. Young for appellant.

William Hays for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

The plaintiff, Henry Sheridan Merritt, is the owner of 40½ acres of land located in Clark and Estill counties near the mouth of Red River, which land was known as tract No. 3 when the Clark Circuit Court partitioned the

lands of his grand-father, Abraham Merritt, in 1865, and which he acquired in 1934 by deed from his father, Henry Merritt. The defendant, W. E. Palmer, is the owner of a tract of 52 acres which was deeded to him in 1920 by L. P. Palmer and wife, the northern boundary line of which is the southern boundary line of plaintiff's land. This controversy involves the location of the true boundary line between these two farms. The line in dispute extends in a westerly direction from where Robinson Spring Branch empties into Red River to a point where plaintiff's closing line runs N. 3½ W. 130 poles to his beginning corner.

The plaintiff instituted this equitable action to quiet title, and the issue between the parties is whether the calls in plaintiff's deed should give way to the meanders of Robinson Spring Branch until his closing line is reached, or whether this branch had no well-defined channel and the calls in the deed should be followed regardless of the branch. While the line in dispute is of considerable length the amount of land involved is only about three acres.

The description in plaintiff's deed where his line crosses Red River reads:

"thence crossing the river N. 85 E. 8 poles to the mouth of Robinson Spring (Branch); N. 54¾ E. 12 poles to a sycamore in said branch; thence up said branch with its meanders."

Then follow courses and distances to a stone, not found, from whence the closing line runs N. 3½ W. 130 poles to the beginning. The defendant's land is not described by metes and bounds but by reference to adjoining lands on the four points of the compass. However, in one of the deeds in his chain of title we find his line begins at the mouth of this branch and runs with its meanders to near the source of the branch.

After the pleadings were made up the chancellor appointed Asa Barrow, a civil engineer, to take the title papers, go upon the land and, having due regard for known monuments, to survey the disputed line and file a report accompanied by a map of his survey. Barrow's report recites he was "unable to find any known monuments marking the lines of the description of the title papers and he began at the nearest known monument, a stone," from which he ran to the beginning corner of

plaintiff's land. He reversed the calls from this beginning corner and ran the last line "S. 0. 20 E. 130 poles to a stake in the line of W. E. Palmer"; from this stake he continued to survey in reverse the disputed line to the mouth of the branch.

In the exceptions filed to Barrow's report, plaintiff, among other things, complains that the survey did not follow the courses and distances appearing in any of the title papers of the record; that it did not have regard for known monuments and failed to follow the meanders of the branch which is called for as a natural object and boundary in the title papers.

The chancellor after hearing proof which covered 150 pages refused to confirm the report made by Barrow and on his own motion transferred the case to the ordinary docket for a jury to determine "the location of the division line and beginning corners." This amounted to granting an issue out of chancery which the court had authority to do on his own motion. 21 C. J., Sections 722, 723, pages 587, 588; Lee v. Beatty, 8 Dana 204, 38 Ky. 204; Stirman v. Crabtree, Ky., 122 S. W. 194. After hearing almost 400 pages of testimony and after viewing the disputed line, the jury found in favor of the defendant, and from the judgment entered by the chancellor describing the dividing line by courses and distances the plaintiff appeals.

There is no controversy between the parties as to Robinson Spring Branch being the boundary line between their two farms, but the difficult task faced by the several surveyors was locating this branch on the ground since in places the branch had no channel but spreads out and forms a swamp. No stone was found at the end of the 130 pole line and there was a direct conflict in the testimony as to whether the defendant told plaintiff that he recognized there was a planted stone at this point marking the corner. Also, the parties disagreed in their testimony as to whether a corner tree formerly stood on the bank of Red River about 50 feet south of the mouth of the branch, and there was conflicting testimony as to whether or not the location of the mouth of the branch had been moved north about 50 feet due to a lock and dam built in 1904 in the Kentucky River near the mouth of Red River, resulting in the raising of the water about 20 feet in the latter, thereby causing the mouth of the branch to shift northward. Counsel for plaintiff in brief

states all the witnesses agree that the branch has a well-defined channel at the end of the 130 pole line run by Barrow, or rather that the branch near this point was recognizable so that Barrow by extending this line 49 feet would have hit the branch as a natural object. We find counsel is in error in his statement that there is no conflict in the testimony on this point. A careful reading of the testimony of Walker, Hunt, the defendant Palmer, the plaintiff Merritt, and Barrow will show there is great diversity of opinion among these witnesses as to whether or not this branch had a well-defined channel and was discernible at this point.

The plaintiff insists that the court should have directed the jury to find that the 130 pole line should have been extended to the bank of the branch, since the rule in this jurisdiction is that where the description of a deed runs with the meanders of a stream and there is a conflict between the calls of a deed and such meanders, the latter controls. That such is the rule will be seen by an examination of Bailey v. McConnell, 14 S. W. 337, 12 Ky. Law Rep. 473; Hylton v. Combs, 229 Ky. 1, 16 S. W. (2d) 754; Kentucky River Coal Corp. v. Maynard, 274 Ky. 760, 120 S. W. (2d) 401, cited by plaintiff. But this rule has no application here because there is much contrariety in the testimony as to whether or not this branch was a stream with a well-defined channel at this point, or whether the water there formed a swamp without flowing in a regular course.

Relying upon Rock Creek Property Co. v. Hill, 162 Ky. 324, 172 S. W. 671; May v. Wolf Valley Coal Co., 167 Ky. 525, 180 S. W. 781; Carter v. Elk Coal Co., 173 Ky. 378, 191 S. W. 294, and other like cases, the plaintiff argues that where there is no dispute as to the material facts governing the location of a line, but its location depends upon the construction to be given the description in the deed, the question becomes one of law for the court and there is nothing to submit to the jury. In other words, what boundary was intended by the terms of the deed is for the court, while its identity is for the jury. If there were ever a case where there is no controversy as to what boundary was intended (the branch) and where there is a conflict as to its identity, this is that case. This whole controversy is in actually locating on the ground the boundary line which both parties admit is correctly described in plaintiff's deed, and it is peculiar-

ly a question of fact which the chancellor could submit to a jury.

Complaint is next made of the instructions wherein the jury were told in effect to determine whether the true line was as is indicated in red on Barrow's map, or as is indicated in black on the map of J. M. Walker, who surveyed the line for the plaintiff. It is contended by the plaintiff that such instructions were confusing to the jury, since Barrow's map not only shows the line as surveyed by him, but indicates the line as run by Walker and both lines on this map have a reddish hue. Such argument might have some force were it not for the fact that there are two maps, one clearly showing it was made by Barrow and the other showing just as clearly it was the work of Walker and the line on the Walker map is plainly black. It must not be overlooked that the jury went upon the land and viewed the two lines. We are confident the jury were not confused by the instructions.

This being an action to quiet title, Section 11 of the Kentucky Statutes designates it should be brought in equity. In a case purely equitable in character the chancellor has a discretion to direct an issue of fact to be tried by a jury and the verdict is not binding on him, but is only advisory. Here no legal issue arose in this equitable action wherein under Section 12 of the Civil Code of Practice either party might as a matter of right have a legal issue transferred to the ordinary docket for trial by jury, in which instance the verdict of the jury has the same effect as the verdict in an ordinary action. Morawick v. Mortineck's Guardian, 128 Ky. 155, 107 S. W. 759; Consolidation Coal Co. v. Vanover, 166 Ky. 172, 179 S. W. 43. The Morawick case discusses fully the weight to be given the finding of the jury where the verdict is not on a purely legal issue, but is returned in an action cognizable only in equity, therefore, merely advisory. It is to the effect that the judgment of twelve unbiased jurors upon a controverted question of fact should not be treated lightly. If the facts are doubtful and should the evidence be equiponderant and the trial appears to have been fair, the chancellor will not lightly cast the verdict aside.

The question here was whether the course of this stream was discernible and especially whether it had a definite course at the 130 pole corner. The jury not only

heard the witnesses and saw the maps, but they went on the premises and viewed the branch for themselves. The chancellor accepted their verdict and established the line as surveyed by the commissioner he appointed to run it. We are not inclined to disturb the findings of the chancellor supported by the verdict.

By cross appeal the defendant is seeking to slightly modify the judgment entered by the chancellor. He seeks to change the beginning corner from the stake at station No. 3 on the Barrow map to a double sycamore at the end of a fence mentioned in the pleadings. As the jury found the line run by Barrow was the true division line, the chancellor committed no error when he adjudged the division line begins at station No. 3 on the Barrow map and not at the double sycamore.

The judgment is affirmed on the appeal and on the cross appeal.