## Owings et al. v. Webb's Ex'r.

May 16, 1947.

George K. Holbert, Judge.

P. M. Basham, L. A. Faurest, Jr. and W. D. Ashcraft for appellant.

Percy Shumate for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

L. F. Webb died testate on December 30, 1945. His will named J. R. Shumate executor, who was directed to convert the real estate into cash and divide it equally among certain close relatives the testator named as beneficiaries.

This equitable action was filed by the executor against George W. Owings and wife to set aside seven deeds that decedent had executed to them. The petition averred that Mr. Webb lacked mental capacity to execute the deeds, also that they were obtained through fraud and undue influence on the part of the grantees. Upon motion of the appellants an issue out of chancery was granted and the questions of mental capacity and undue influence were submitted to the jury under appropriate instructions relating to the last five deeds Webb executed. There was no evidence of fraud, and the proof was not sufficient to authorize the Court to submit the question of lack of mental capacity and undue influence as to the first two deeds, which were executed in 1937.

The jury found that Mr. Webb had mental capacity to make the deeds he executed on May 22, and July 18,

1944, but lacked such capacity to make the ones he executed on August 7, 1944, February 27 and June 14, 1945. The jury did not find against any of the deeds on account of undue influence.

The chancellor overruled appellants' motion for a new trial and entered judgment canceling the three deeds which the jury found Mr. Webb lacked mental capacity to execute. By a separate order the chancellor reserved for further adjudication the rights of the parties in the property covering the deeds which were set aside, since there had been a consideration paid by the grantees for the deeds. Appellants ask that the judgment be reversed because (1) their motion for a directed verdict should have been sustained; (2) improper conduct of the jury; (3) the jury made an unwarranted compromise by their verdict.

The record shows that Mr. Webb was 88 years of age when he died on December 30, 1945. He resided in Brandenburg on a piece of property he owned and he had lived alone since the death of his wife some 50 years ago. Mr. Webb formerly had lived well, but some eight or ten years before his death he became careless about his person and house. Although he had several thousand dollars besides his real estate, his person and home became so untidy and dirty as to be in a deplorable condition when he suffered a serious and prolonged illness from August to November in 1943.

George Owings and his wife, Nellie, are colored people who resided near Mr. Webb. Although Mr. Webb was white, it appears that George was his closest friend and the person upon whom he most depended. George traded a good bit for Mr. Webb in a small way and had considerable influence with the old gentleman, who seemed to rely upon George's judgment in business matters. Without a doubt, George and his wife rendered many useful services to the old man, but it appears from this record that George usually managed to take very good care of himself while helping his friend. Roy Neafus, Circuit Court Clerk, testified that George admitted to him that he was not above beating the old man in a trade.

Without going into detail in the 250 pages of testimony, we will say it was ample for the court to submit

the case to the jury and to sustain the verdict, and the court properly refused a peremptory instruction in favor of appellants. O. C. Rice, a neighbor of Mr. Webb, testified that in 1944 the old man got lost in Rice's yard one night and Rice had to take him home. After Mr. Webb's serious illness from August to November 1943, he contended he had been sick but a few days and that $13 was sufficient compensation to Rice for nursing him during his illness. Also, Mr. Webb did not want to pay Dr. Stith for professional services and said the doctor was slipping through the woods to his home to run up a bill. This was an hallucination upon the part of Mr. Webb as there was no woods surrounding his home.

Dr. Stith testified the old man had the mind of a six or seven year old child. Two bankers with whom Mr. Webb did business, Guy A. Hardin and Eugene L. Fontaine, both testified Mr. Webb was mentally incompetent to transact business or execute these deeds in 1944 or 1945, and their opinions were based upon facts which they related. Roy Neafus, the Circuit Court Clerk, was a distant cousin of Mr. Webb and he testified of the old gentleman telling him of having horses on a clover pasture up to their knees, when the time was January and snow covered the ground.

It is true that some 19 witnesses testified for appellants that Mr. Webb's mind never failed and that he was competent to transact business up until he was taken to the hospital shortly before his death. It is elementary where there is a conflict in substantial evidence of probative value that the issue should be submitted to the jury, and we will content ourselves with citing only one case on the subject. Elliott v. Drury's Adm'r., 304 Ky. 92, 200 S. W. 2d 141. The facts are not similar to those in the instant case but the principle of law is the same and the Elliott opinion discusses the subject and cites many authorities.

No legal issue arose in this equitable action wherein under sec. 12 of the Civil Code of Practice either party as a matter of right might have such issue transferred to the ordinary docket for trial by jury, in which the verdict has the same effect as the verdict in an ordinary action. Here, the issue was cognizable only in equity, therefore the verdict was merely advisory. Truitt

v. Truitt's Adm'r, 290 Ky. 632, 162 S. W. 2d 31, 140 A. L. R. 1127. The finding of an unbiased jury upon a controverted question of fact will not be treated lightly and even if the facts are doubtful and should the evidence be equiponderant, and the trial appears to have been fair and the chancellor let the verdict stand, we will not disturb his judgment. Merritt v. Palmer, 289 Ky. 141, 158 S. W. 2d 163.

There is no merit in appellants' contention that their rights were prejudiced because the clerk of the court talked to a couple of the jurors during the trial, in contravention of KRS 29.310. The bill of exceptions shows that during a recess in the trial the clerk and a juror conversed as to where in the community a corn shredder was then operating. The clerk and another juror talked of where they would eat lunch that day. Sections 245 and 246 of the Criminal Code of Practice are quite similar to KRS 29.310 and provide that no person shall communicate with a juror on any subject connected with the trial. We have several times held that no reversible error was committed when some person innocently conversed with a juror on a matter foreign to the trial. Burnam v. Commonwealth 289 Ky. 312, 158 S. W. 2d 131, and the authorities therein cited.

We are unable to agree with appellants that the verdict is the result of an unwarranted compromise on the part of the jury. The testimony of appellee referred to several different times. or dates as to when Mr. Webb became incapacitated. The instructions, and no complaint was made of them, told the jury they might find Mr. Webb mentally capable of executing all five of the deeds or mentally incapable of executing all five of them, or they might find him mentally capable of executing some of them or mentally incapable of executing others of them; and they should show by their verdict which of the deeds he was mentally capable of executing and which of them he did not have capacity to execute. This is what the jury did and appellants will not be heard to complain of such a verdict.

Complaint is made by appellee that appellants' motion for a new trial was not filed within three days from the finding of the verdict as is required by sec. 342 of the Civil Code of Practice. The record shows the ver-

dict was returned on Saturday, September 21st, and that no court was held on Monday, the 23rd, and that the motion for a new trial was filed on the 25th. We have held that an intervening Sunday, also days that the court is not in session, will not be counted in estimating the three days in which the motion must be filed. Witt v. Lexington & E. R. Co., 158 Ky. 401, 165 S. W. 399; Black v. National Bank of Ky., 226 Ky. 152, 10 S. W. 2d 629. In this instance the days to be counted in computing the three days within which the motion for a new trial had to be filed are September 21st, 24th and 25th. As the motion was filed on the 25th, the Code provision was met.

The judgment is affirmed.