**ROLAND v. MURRAY.**

Court of Appeals of Kentucky.

April 27, 1951.

Rehearing Denied June 22, 1951.

O. M. Rogers, Covington, for appellant.

Arthur J. Daly, Cincinnati, Ohio, for appellee.

SIMS, Justice.

Alexander W. Murray sued Edna Roland, doing business as Roland Cab Company, and the driver of her cab, James Graham, for $19,500 damages for personal injuries and the destruction of his automobile alleged to have been caused by the negligence of Roland's driver when her cab collided with Murray's car at the intersection of Main and Seventh Streets in Covington on Christmas morning, 1947, at 6:30 A.M. In a separate answer appellant denied negligence on the part of her driver and averred the collision was caused by appellee's negligence, and by way of counterclaim she sought to recover from appellee $1700 damages done her cab and $2450 for the loss of the use of the cab. Graham filed a separate answer denying negligence on his part, and by way of counterclaim asked $1070 damages against appellee for personal injuries.

Before trial appellee dismissed his action as to Graham. The trial resulted in a verdict against appellant for $6000, and the jury found nothing for Graham on his counterclaim. Roland appeals from the judgment entered on the verdict against her, insisting: 1. the verdict is flagrantly against the evidence and she should have had a peremptory; 2. the verdict is excessive; 3. the instructions are erroneous. Graham did not appeal from the judgment dismissing his counterclaim.

Main Street in Covington runs north and south and two streetcar tracks are in the center of it. Northbound traffic travels east of the tracks and southbound traffic travels west of them. Seventh Street runs in an east-west direction and is not as wide as Main Street. Main and Seventh Streets do not intersect at right angles but Seventh Street bears to the south, consequently there is a traffic light on a pole at the northeast corner of Main and Seventh Streets which controls traffic on Main Street, and at the northwest corner of Main Street is a traffic light on a pole which controls traffic on Seventh Street. Murray was driving a Crosley car, which is very small and weighs about 1150 pounds, while the cab driven by Graham was a Plymouth weighing between 3000 and 3600 pounds.

There were but three eyewitnesses to the accident; Murray, Graham and Roy O'Banion. The two former were driving the cars which collided and O'Banion was driving north on Main Street 30 or 40 feet behind Murray. It is not disputed that Murray was on his left, or west, side of Main Street; that it was dark and both vehicles had their lights on but the visibility was good and there was no snow or ice on the streets; that Murray was thrown from his car and landed under the cab which was pushed against a pole at the northwest corner of Seventh and Main Streets by the Crosley and the latter was facing south on Main Street after the collision, which was in the opposite direction it was travelling before the collision.

Murray testified he was travelling some 15 or 20 miles an hour and as he got to within 50 or 75 feet of the intersection the Main Street light turned green and he drove into the intersection, "and just as I went into the intersection the cab was there, and that's all I knew for several days."

Main Street between Eighth and Seventh Streets is a short block. O'Banion testified the Crosley passed him on Main Street at the intersection of Eighth Street and started bearing to the left. Right after the Crosley crossed Eighth Street the light turned red and the Crosley ran the red light and hit the cab which was on the north side of Seventh Street and to the west of the streetcar tracks.

Graham testified he was driving his cab west on Seventh Street at not exceeding 20 miles per hour, had the green light and never saw the Crosley until the collision. The cab was struck near its left front door and pushed to the northwest corner of Seventh and Main Streets. He pulled Murray from under the cab and O'Banion left to summon aid.

■■■ Appellant argues that as O'Banion was a disinterested witness and as his testimony corroborates Graham and directly contradicts Murray, the verdict is flagrantly against the evidence and she was entitled to a peremptory instruction, citing Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877. But here, there was more than a scintilla of evidence that appellee had the green light. He positively and unequivocally testified the light turned green when he was 50 or 75 feet south of the intersection and it was green when he drove into the intersection. True, O'Banion was a disinterested witness and his testimony supports that of Graham and while we may think the evidence preponderates on the side of appellee, yet the jury and not this court weighs the evidence and passes on the credibility of witnesses. Where a jury is properly instructed, as we will later see this one was, we cannot interfere with the verdict and say it is flagrantly against the evidence because two witnesses testified positively on one side as to a controlling fact and only one testified on the other side as to such fact. Where there is a conflict in substantial evidence of probative value the case should go to the jury although defendant's witnesses on the point outnumber those of plaintiff. Mann's Ex'r v. Leyman Motor Co., 234 Ky. 639, 28 S.W.2d 956; Elliott v. Drury's Adm'x, 304 Ky. 93,

200 S.W.2d 141; Owings v. Webb's Ex'r, 304 Ky. 748, 202 S.W.2d 410.

No instruction was requested or given on permanent injury and appellee only sought to recover for pain and suffering, medical expenses incurred, plastic surgery to revise his badly scarred face and damages done his car. It was stipulated his car was worth $800, which the proof shows was a total loss. Also, the proof shows his medical expenses were $132.30 and that it will take at least four operations by a plastic surgeon to revise appellee's face and a reasonable surgeon's fee for such work will be from $1000 to $2000.

■■■ Appellant most vigorously insists that the verdict of $6000 is excessive and cites many cases where we have held verdicts for smaller amounts, where the injuries were not permanent, were excessive. But the adequacy, or inadequacy, of damages cannot be measured properly from adjudicated cases and it is impossible to lay down a general rule on the subject since the facts of each case must determine the amount of the verdict. There can be no rule of law fixing the monetary measure of damages for pain and suffering in personal injury cases and usually the best that can be done is to leave the matter to the sound discretion of the jury, whose verdict will not be reversed unless it appears to have been influenced by partiality or prejudice, or that the jury has been misled as to the merits of the case. Wilkins v. Hopkins, 278 Ky. 280, 128 S.W.2d 772; Aetna Oil Co. v. Metcalf, 300 Ky. 817, 190 S.W.2d 562; Geoghegan v. Daugherty, 309 Ky. 383, 217 S.W.2d 953; Railway Express Agency v. Bailey, 310 Ky. 781, 220 S.W.2d 997.

■■■ The proof shows appellee was thrown through the windshield of his car. His face was severely cut on each side, his tongue was badly cut, as was his nose and chin, and two teeth were knocked out. He spent a week in the hospital, was unable to resume his regular employment for a month, and it was two or three months after the accident before his face healed sufficiently for him to have dental work done. While in a suit for personal injuries

one may not recover for disfigurement of his face, he may recover the reasonable and necessary expenses in effecting a cure. Spencer v. Webster, 305 Ky. 10, 202 S.W. 2d 752. Manifestly, the cost of plastic surgery in revising a face is just as much a medical expense as orthopedic surgery in grafting, setting or uniting broken bones. Here, the instruction on the measure of damages properly limited appellee's recovery to damages to his car, to pain and suffering and reasonable expenses for medical services incurred, "or which it is reasonably certain he will hereafter incur as the direct and proximate result of such injuries, if any, not exceeding the sum of $2132.30, the amount claimed in the petition." When $800, the value of the completely demolished car, is added to $2132.30, which the proof shows appellee has spent or may reasonably expect to spend for medical and surgical services, he has received in round numbers only $3000 for his pain and suffering. We cannot say the figure is excessive under the facts of this case.

Appellant insists the only issue raised by the proof as to negligence is which of the two cars entered the intersection against the red light; and in addition to telling the jury it was the duty of each driver not to enter the intersection on a red or on an amber light, the court erred in instructing on the reciprocal duties of the drivers to keep a lookout, to keep their cars under reasonable control and to use ordinary care to avoid colliding with other vehicles on the street.

We cannot agree with appellant that this instruction submits extraneous issues or matters not in dispute. A green light, or "go" signal, is not a command to go regardless of other persons or vehicles that may be already within the intersection, but is a qualified permission to proceed carefully in the direction indicated. 5 Am. Jur. "Automobiles" § 309, p. 671; Bashfield Cyclopedia on Automobile Law and Practice, 1 Vol (Permanent Edition Part 2) § 686, p. 581; Annotations 75 A.L.R. 974.

Complaint is made of the testimony of Dr. Quill as to the cost of plastic surgery on the ground that he is a general and not a plastic surgeon. However, the motion and grounds for a new trial do not include this question, hence we cannot review it. City of Louisville v. Lambert, Ky., 116 S.W. 261; Gooch v. Collins, 156 Ky. 282, 160 S.W. 1038.

By a supplemental motion for a new trial appellant complains that one of the jurors did not make true answers on his voir dire. In her brief she says she failed on this motion because the testimony of a juror cannot be used to impeach his own verdict. True, a juror may not impeach his own verdict, but in Drury v. Franke, 247 Ky. 758, 57 S.W.2d 969, 88 A.L.R. 917, it was said on page 984 of 57 S.W.2d that the examination of a juror relative to what he said on his voir dire did not violate the rule against his giving evidence to impeach his own verdict.

Appellant filed a supplemental motion for a new trial on the ground of newly discovered evidence, which she supported by affidavits of certain persons living in Covington, that appellee was driving his car while drunk in that city in the early morning of Dec. 25, 1947, and that his wife telephoned police officers of Covington to arrest him. Neither the motion nor the affidavits filed in support thereof show any diligence on the part of appellant in an effort to have discovered this evidence before the trial, which was in May following the accident in December, hence the court properly refused to grant her a new trial on this ground. Collinsworth v. Harvey Coal Corp., 288 Ky. 704, 157 S.W.2d 294; Rice v. Osborne, 306 Ky. 591, 208 S.W.2d 747.

The judgment is affirmed.

MILLIKEN, J., not sitting.